# CROTTY *v.* UNION MUTUAL LIFE INSURANCE COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 248. Argued March 28, 1892. — Decided April 18, 1892.

A promise by the insurer in a policy of life insurance to pay the amount of the policy on the death of the assured to "M. C., his creditor, if living;" if not then to the executors, etc. of the assured, is a promise to pay to that creditor, if he continues to be a creditor, and if not, then to the executors, etc.; and in an action on the policy by the creditor, if sufficient time elapsed between the making of the policy and the death of the assured to warrant an assumption that the debt may have been paid, it is incumbent on the plaintiff to prove the continuance of the relation and the amount of the debt.

The fact that an insurance company does not object to answers made to questions on a blank sent out by it for securing proof of the death of

the assured, does not prevent it from challenging the truth of any state-
ment in such answers.

*Life Insurance Company* v. *Francisco,* 17 Wall. 672, distinguished from this
case.

On January 31, 1883, defendant in error, defendant below,
insured the life of Michael O'Brien. The language of the
policy was this: "Does promise Michael O'Brien, of Lockford
in the State of California to pay to said Michael O'Brien the
sum of ten thousand dollars (any indebtedness to the company
on account of this contract to be first deducted therefrom)
at the office of the company in Portland, Maine, on the fif-
teenth day of January in the year nineteen hundred and
forty-one, or if said Michael O'Brien shall die before that time,
to pay said sum within ninety days after notice and satisfac-
tory proofs of death shall have been furnished to the company
at its said office, to Michael Crotty his creditor if living; if
not, then to the said Michael O'Brien's executors, administra-
tors or assigns, upon the following conditions." On January
2, 1885, plaintiff in error, plaintiff below, commenced his ac-
tion in the Circuit Court of the United States for the Northern
District of California to recover on the policy. The complaint
contained these allegations:

"Third. That plaintiff was at the time of effecting said
policy of insurance, and at the time of the death of said
Michael O'Brien, a creditor of said Michael O'Brien for vari-
ous sums of money, which this plaintiff had at various times
advanced to the said Michael O'Brien, amounting to several
thousand dollars, and as such creditor had a valuable interest
in the life of said Michael O'Brien.

"Fourth. That on the 15th day of September, 1883, at the
city of Boston, State of Massachusetts, the said Michael
O'Brien died.

"Fifth. That on the 14th day of January, 1884, plaintiff
furnished the defendant with proof of the death of said
Michael O'Brien in this case, and otherwise performed all the
conditions of the said policy of insurance on his part."

The answer denied specifically that O'Brien was ever in-
debted to plaintiff, and denied that plaintiff ever performed

the conditions of the policy, except by furnishing proofs of the death of O'Brien. In the proofs of death, which were on a blank furnished by the insurance company, were these questions and answers: "3. In what capacity or in what title do you make the claim? As creditor and beneficiary named in the policy. 17. If the claim is made under an assignment, give the date, name of assignor and the consideration. The claim by me as creditor of deceased and beneficiary named in the policy." On the trial the only evidence furnished by the plaintiff of his interest in the policy was that contained in the policy itself and in these two statements in the proofs of death. The court instructed the jury to find a verdict for the defendant, to reverse which judgment plaintiff sued out this writ of error

*Mr. Frederic D. McKenney* for plaintiff in error.

*Mr. J. H. Drummond* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

Without noticing other questions discussed by counsel, it is sufficient to consider that of plaintiff's interest in the policy. It is the settled law of this court that a claimant under a life insurance policy must have an insurable interest in the life of the insured. Wagering contracts in insurance have been repeatedly denounced. *Cammack* v. *Lewis*, 15 Wall. 643, in which a policy of $3000, taken out to secure a debt of $70, was declared "a sheer wagering policy." *Connecticut Mutual Life Insurance Co.* v. *Schaefer*, 94 U. S. 457, 461, in which it was said: "In cases where the insurance is effected merely by way of indemnity, as where a creditor insures the life of his debtor, for the purpose of securing his debt, the amount of insurable interest is the amount of the debt." *Warnock* v. *Davis*, 104 U. S. 775.

Confessedly, plaintiff sues as a creditor of O'Brien. Within the language quoted, the amount of his insurable interest was

the amount of his debt; and the question is whether the policy and the proofs of death contained sufficient evidence of such insurable interest. It is unnecessary to enter into the disputed question, as to how far a policy of insurance taken out by a creditor on the life of his debtor is affected by a change in the relations between debtor and creditor prior to the maturity of the policy; for here the contract was between the insured, O'Brien, and the company; the promise of the company was to him, and to pay to him at the maturity of the policy, with a proviso that if the insured died before the end of the term payment should be made "to Michael Crotty, his creditor, if living; if not, then to the said Michael O'Brien's executors," etc. The words "if not" grammatically stand in antithesis to the words immediately prior, "if living;" and yet considering the purpose of the contract, and the words which follow directly thereafter, it would seem not unreasonable that they refer to a determination of the relation of creditor, and as though the language was, "if not a creditor, then to the said Michael O'Brien's executors," etc. If a policy of insurance be taken out by a debtor on his own life, naming a creditor as beneficiary, or with a subsequent assignment to a creditor, the general doctrine is that on payment of the debt the creditor loses all interest therein, and the policy becomes one for the benefit of the insured, and collectible by his executors or administrators. In 2 May on Insurance (3d ed.,) sec. 459a, the author says: "A creditor's claim upon the proceeds of insurance intended to secure the debt should go no further than indemnity, and all beyond the debt, premiums and expenses should go to the debtor and his representatives, or remain with the company, according as the insurance is upon life or on property." *Central Bank* v. *Hume*, 128 U. S. 195, 205. But whatever doubts may exist as to the law applicable to such cases, or the rights of action on such a policy, the plaintiff in this case put his own construction on the contract, and tendered an issue which was accepted by the company. He alleged that he was a creditor at the time of the contract, and at the time of the death. Upon the issue thus presented the case went to trial. The

promise of the policy is to pay to Michael Crotty, his creditor, if living; and it is contended that this is an admission on the part of the company sufficient to justify a verdict against it. If an admission at all, it is good only as an admission of the date at which it was made, to wit, the date of the policy. The relation of debtor and creditor is not a permanent one, like that of parent and child, but one which may vary from day to day, changing both in fact and amount, according to the successive business transactions between the parties. So, admission or proof that the relation of debtor and creditor existed between two parties at one date is not admission or proof that months thereafter the same relation and to the same amount subsisted. If it were proven that the relation of debtor and creditor existed at the date of the issuing of the policy, and the beneficiary died the succeeding day, it might be that the nearness of the two dates would carry with it an inference that the relation still subsisted; but it would not do to rest on the same inference when many months had intervened between the date of the policy and the time of death.

Again, the indebtedness of O'Brien to plaintiff, if any existed, was a matter peculiarly within the knowledge of plaintiff; and if that indebtedness is an essential factor in his right to recover, justice requires that he should by affirmative testimony establish both the fact and the amount.

Still, again, not only does justice between the parties, but also that public policy which denounces wagering contracts, require that the proof of indebtedness should be distinct and satisfactory. It would tend to a successful consummation of wagering contracts in insurance if the mere recital in the policy was held sufficient to sustain a recovery in favor of the alleged creditor, no matter how long after the date of the policy the death of the insured happened. Admissions, whether direct or incidental, should never be carried beyond their actual extent, or the reasonable inferences therefrom, and should not be invoked to work injustice to parties litigant, or thwart the demands of sound public policy.

Neither can the statements of the plaintiff in his proofs of

death be considered evidence in his favor of the fact that he is a creditor, or the amount of the debt. All that there is in the proofs of death is his own statement, and surely a plaintiff cannot make his sworn statements at another time and place sufficient evidence, on a trial, of the existence of an essential and disputed fact. These statements are evidence against the claimant, and not against the insurance company. *Insurance Co.* v. *Newton*, 22 Wall. 32. Nor is the fact that the proofs of death were received by the insurance company without question an admission on its part of the truth of all the matters stated therein. The purpose of proofs of death in life insurance and proofs of loss in fire insurance cases is to put the insurance company in possession of the facts concerning the death or loss as claimed by the beneficiary or insured upon which it is to base its determination as to making or refusing payment, and when it receives such proofs without question it is an admission on its part that they are in form sufficient, but not that all the facts stated therein are true.

The policy in this case called for proofs of death; and the company by its answer admitted that satisfactory proofs had been furnished. The fact that, in the blank it prepared and sent to be filled out, it asked many questions which were answered by the claimant, and the proofs thus made were received without objection, did not prevent the company from challenging in court the truth of any fact stated therein essential to the plaintiff's right of recovery, and did not amount to an admission on its part respecting such fact. The case of *Life Insurance Company* v. *Francisco*, 17 Wall. 672, is cited by plaintiff as authority for a contrary view. There is perhaps a sentence or two in the opinion which, detached from the rest, and considered apart from the facts of the case, might justify the claim of plaintiff. That was a suit on a contract of life insurance. The insured died before the policy was actually issued. If it had been issued it would have contained a stipulation that "payment of the loss would be made within ninety days after notice of the death, and due proof of the just claim of the assured." The beneficiary was the wife of the insured. On the trial the plaintiff offered evidence to

prove the contract and the death of her husband; that she had filled up in the presence of the company's agent the blank forms which it had furnished, and which were always used in making proofs of death; and that he had received without objection and retained them; but offered no evidence as to the contents of those papers. She rested her case upon this testimony, and the court refused an instruction that she could not recover. This court held that such instruction was properly refused. Of course, as a wife, she had an insurable interest. Proof of the contract and of her husband's death established the fact of her right to recover, unless she had failed to furnish due proofs of her just claims; but as the company received them without objection, and did not return them for correction, it was properly held that they were sufficient. All that was in fact determined was that if the proofs were retained without objection the court could not declare them insufficient.

Further, in the case before us, the blank which was furnished to the plaintiff by the company, and upon which he prepared the statements, contained this notice:

. "This blank is furnished (upon application) for the convenience and assistance of the representatives of the insured, and the company reserves the right to consider and determine the question of its liability under any policy without prejudice or presumption by reason of the delivery hereof."

So the party had full information in advance that the company's right to challenge its liability would not be in any manner prejudiced by the receipt of these proofs of death, or any statements therein.

We see no error in the ruling of the court below, and its judgment is

*Affirmed.* ·

Mr. Justice Gray was not present at the argument and took no part in the decision of this case.