## HATTIE E. HARRINGTON v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a Corporation.

### (34 L.R.A.(N.S.) 373, 131 N. W. 246.)

**Statutory Construction — Life Insurance — Policy — Dating Back.**

1. Construing § 5948 of the Revised Codes of 1905, *held*, that the company cannot be permitted to show that the actual date of the issuance of a policy of life insurance was of a later date than the date recited in the contract, where the policy contains an acknowledgment of the receipt of the premium.

**Insurance — Life Insurance — Suicide.**

2. In such case, the date of the policy as specified in the contract being binding on the company, *held*, that under the provisions of § 6064 of the Revised Codes of 1905, the defense that the insured committed suicide can-

---

Note.—As to suicide while sane as a defense to an action on a policy containing no provision as to effect of suicide, see note in 8 L.R.A.(N.S.) 1124.

As to effect of words, "sane or insane," in a suicide clause, see note in 17 L.R.A. (N.S.) 260.

not be set up, when suicide occurs after the expiration of one year from the date of the policy.

**Insurance — Life Insurance — Suicide.**

3. Where the insured commits suicide while sane, after the expiration of one year from the date of the policy, the company is liable for the amount of the policy even though it appeared that the act of suicide was premeditated before the expiration of one year from the date of the policy, and even though the date of the liability of the company is fixed by the voluntary act of the insured, this being one of the risks assumed by the company, where, as, in this case, the policy contains a provision that the company shall not be liable in the event of the insured's death by his own act, whether sane or insane, during the period of one year after the issuance of the policy.

Opinion filed April 21, 1911.

Appeal from District Court, Grand Forks county; *Templeton, J.*

Action by Hattie E. Harrington against the Mutual Life Insurance Company of New York. Judgment for plaintiff, and defendant appeals.

Affirmed.

*Ball, Watson, Young, & Lawrence,* for appellant.

The policy evidences the contents. New York L. Ins. Co. v. Mc-Master, 30 C. C. A. 532, 57 U. S. App. 638, 87 Fed. 63; McMaster v. New York L. Ins. Co. 40 C. C. A. 119, 99 Fed. 856; Logan v. Provident Sav. Life Assur. Soc. 57 W. Va. 384, 50 S. E. 529; Hutson v. Jenson, 110 Wis. 26, 85 N. W. 689.

The word "issued" as applied to the policy means the beginning of contractual relations under it. Coley v. Lewis, 91 N. C. 23; 4 Words & Phrases, p. 3781; Corning v. Meade County, 42 C. C. A. 154, 102 Fed. 57; Folks v. Yost, 54 Mo. App. 59; Homestead F. Ins. Co. v. Ison, 110 Va. 18, 65 S. E. 463; Kansas Mut. L. Ins. Co. v. Coalson, 22 Tex. Civ. App. 64, 54 S. W. 388; Sisk v. Citizens' Ins. Co. 16 Ind. App. 565, 45 N. E. 804; Orcutt v. Moore, 134 Mass. 52, 45 Am. Rep. 278; Styles v. Wardle, 4 Barn. & C. 908, 7 Dowl. & R. 507, 4 L. J. K. B. 81, 28 Revised Rep. 501; Houston, E. & W. T. R. Co. v. Keller, 90 Tex. 214, 37 S. W. 1062; Logsdon v. Supreme Lodge, F. U. 34 Wash. 666, 76 Pac. 292; Pease v. Ritchie, 132 Ill. 638, 8 L.R.A. 566, 24 N. E. 433; Spencer v. Myers, 73 Hun, 274, 26 N. Y. Supp. 371.

Suicide contemplated by assured, when risk is assumed, renders the insurer not liable. Hopkins v. Northwestern Life Assur. Co. 94 Fed. 729; Weber v. Supreme Tent, K. M. 172 N. Y. 490, 92 Am. St. Rep. 753, 65 N. E. 258; Shipman v. Protected Home Circle, 174 N. Y. 398, 63 L.R.A. 347, 67 N. E. 83; Davis v. Supreme Council R. A. 195 Mass. 402, 10 L.R.A.(N.S.) 722, 81 N. E. 294, 11 A. & E. Ann. Cas. 777; May, Ins. 2d ed. p. 443; Mutual L. Ins. Co. v. Armstrong, 117 U. S. 591, 29 L. ed. 997, 6 Sup. Ct. Rep. 877; Borradaile v. Hunter, 5 Mann. & G. 653, 5 Scott, N. R. 418, 12 L. J. C. P. N. S. 225, 7 Jur. 443; Blackstone v. Standard Life & Acci. Ins. Co. 74 Mich. 593, 3 L.R.A. 486, 42 N. W. 156; Hatch v. Mutual L. Ins. Co. 120 Mass. 550, 21 Am. Rep. 541; Ritter v. Mutual L. Ins. Co. 169 U. S. 139, 42 L. ed. 693, 18 Sup. Ct. Rep. 300; Burt v. Union Cent. L. Ins. Co. 187 U. S. 362, 47 L. ed. 216, 23 Sup. Ct. Rep. 139; Supreme Commandery K. G. R. v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332; Amicable Soc. v. Bolland, 4 Bligh, N. R. 211, 2 Dow & C. 1.

*Guy C. H. Corliss,* for respondent.

The year's period began with the date of the policy. Gage v. McCord, 5 Ariz. 227, 51 Pac. 977; Bement v. Trenton Locomotive & Mach. Mfg. Co. 32 N. J. L. 513.

Doubt as to construction of a policy is resolved against the insurer who selected the language. 25 Cyc. Law & Proc. p. 739; Mareck v. Mutual Reserve Fund Life Asso. 62 Minn. 39, 54 Am. St. Rep. 613, 64 N. W. 68; Grier v. Mutual L. Ins. Co. 132 N. C. 542, 44 S. E. 28; Franklin Ins. Co. v. Villeneuve, 25 Tex. Civ. App. 356, 60 S. W. 1014; Mutual Reserve Fund Life Asso. v. Payne, — Tex. Civ. App. —, 32 S. W. 1063; Patterson v. Natural Premium Mut. L. Ins. Co. 100 Wis. 118, 42 L.R.A. 253, 69 Am. St. Rep. 899, 75 N. W. 980; Rayburn v. Pennsylvania Casualty Co. 138 N. C. 379, 107 Am. St. Rep. 548, 50 S. E. 762; Mutual Reserved Fund Life Asso. v. Austin, 6 L.R.A.(N.S.) 1064, 73 C. C. A. 498, 142 Fed. 398.

As to contractual purposes, recital of payment in a policy is binding upon the insurer. Rev. Codes 1905, § 5948; Grier v. Mutual L. Ins. Co. 132 N. C. 542, 44 S. E. 28; Kendrick v. Mutual Ben. L. Ins. Co. 124 N. C. 315, 70 Am. St. Rep. 592, 32 S. E. 728.

An insurance company may date back its policy, receive pay for the elapsed period, and deem it in force from such date. 2 May, Ins. Sec.

400; Rayburn v. Pennsylvania Casualty Co. 138 N. C. 379, 107 Am. St. Rep. 548, 50 S. E. 762; 25 Cyc. Law & Proc. p. 742.

Beneficiary is not affected by the secret suicidal purpose of assured. Patterson v. Natural Premium Mut. L. Ins. Co. 100 Wis. 118, 42 L.R.A. 253, 69 Am. St. Rep. 899, 75 N. W. 980; 25 Cyc. Law & Proc. p. 881; Cases in note to 8 L.R.A.(N.S.) 1124; Supreme Conclave I. O. H. v. Miles, 92 Md. 613, 84 Am. St. Rep. 528, 48 Atl. 845; Lange v. Royal Highlanders, 75 Neb. 188, 10 L.R.A.(N.S.) 666, 121 Am. St. Rep. 786, 106 N. W. 224, 110 N. W. 1110.

The motive with which an act, otherwise lawful, is committed, does not render such lawful act unlawful. Boyson v. Thorn, 98 Cal. 578, 21 L.R.A. 233, 33 Pac. 492; Fisher v. Fielding, 67 Conn. 91, 32 L.R.A. 236, 34 Atl. 714; Phelps v. Nowlen, 72 N. Y. 39, 28 Am. Rep. 93; Frazier v. Brown, 12 Ohio St. 294; Chatfield v. Wilson, 28 Vt. 49; People ex rel. Tibbits v. Canal Appraisers, 13 Wend. 360.

Burr, District Judge. This action involves a question of the liability of the defendant herein upon a life insurance policy issued by the defendant to one Charles E. Rich, in which policy the plaintiff herein is named as beneficiary. The policy is dated May 9th, 1908, and is in the sum of $1,000. It is not necessary to set forth the pleadings in detail, as almost all of the facts are admitted by the parties. The answer of the defendant, however, in three paragraphs thereof, sets forth statements which the trial court failed to find as facts in this case, which failure is assigned as error. These paragraphs are as follows:

Paragraph 5: "Defendant further alleges that said Charles E. Rich committed suicide on the 11th day of May, 1909, and, as a result of said act on his part, died on said 11th day of May, 1909; that said act of suicide was committed while said Charles E. Rich was sane, and was with the deliberate intention of taking his own life, and was committed by said Charles E. Rich on that particular date in contemplation of the expiration of one year from the date of said policy, and for the purpose of creating a liability upon the defendant under the terms and conditions of said policy of insurance; that said Charles E. Rich intentionally, and for the fraudulent purpose of creating a liability against the said defendant, waited until the expiration of one

year from the date of said policy for the purpose of creating a liability thereunder against the defendant."

Paragraph 7: "Defendant further alleges that the period of one year from the date of the execution and signing of the said policy by the defendant, or from the date of the said application of the said Charles E. Rich, did not expire until the 19th day of May, 1909, eight days subsequent to the date of the suicide of the said Charles E. Rich."

Paragraph 8: "That the said defendant received no benefit nor consideration for the affixing of the date of said policy of insurance as of a date previous to the actual signing and execution thereof."

Among the undisputed facts in this case, we find that the insured was born November 13, 1865; premium based on age; that on the 18th day of May, 1908, he made his written application to the defendant for a policy of life insurance in the sum of $1,000, and that said application was, in due course, forwarded to the head office of the defendant and was duly accepted by the defendant, and the defendant duly issued and delivered to the said Charles E. Rich the said insurance policy, which policy was delivered on or before the 1st day of July, 1908; that for the conduct of its business, defendant from time to time "issued rules and regulations and instructions for the local agents, to guide them in the reception of applications," and at the time this application was received one of the said rules of the said company in force was as follows:

"Insurance age; dating back.—The insurance age is determined by the birthday of the insured closest to the date of the policy (which is the same as that of the examination). Where the age has recently changed it is sometimes possible, by the applicant's request embodied in the application, to have the policy dated back a few days in order to give the applicant the benefit of the rate of a younger age;" that the written application made by the said Charles E. Rich, as aforesaid, contained the following statement and request: "The premiums are to be paid semiannually. First premium, May 9th, 1908." Also: "It is hereby warranted and agreed that I will not die by my own hand, whether sane or insane, during the period of one year next following the said date of issue;" that the said policy of insurance, delivered to and accepted by the said Charles E. Rich, contained the following clause and addition: "Suicide. The company shall not be liable hereunder in the event of the insurer's death by his own hand,

whether sane or insane, during the period of one year after the issuance of this policy, as set forth in the provisions of the application indorsed hereon or attached hereto;" that the said policy contained the following clause and condition: "This policy and the application heretofore, a copy of which is indorsed hereon and attached hereto, constitute the entire contract between the parties hereto;" that the defendant dated the said policy of insurance as of the date, May 9th, 1908, and by reason thereof the insured received the benefit of a lower premium, and that said lower premium amounted annually when at the age of forty-two years, to $16.04; and the semiannual premium, to $8.34; but that the premium rate at the age of forty-three is $16.30 for the annual premium and $8.58 for the semiannual premium; that the defendant accepted from the said Charles E. Rich the semiannual premium of $8.34 as a premium upon the said policy from May 9th, 1908, to November 9th, 1908, and the further sum of $8.34, as the semiannual premium on said policy, from November 9th, 1908, to May 9th, 1909; that on the 10th day of May, 1909, said Charles E. Rich paid defendant the sum of $8.58, as and for the semiannual premium upon the said insurance policy for the period from May 9th, 1909, to November 9th, 1909, and the defendant duly issued and delivered to the said Charles E. Rich its receipt for the said semiannual premium, as follows:

The Mutual Life Insurance Company of New York hereby acknowledge receipt of premiums on said policy.   Policy No. 17367639. Premium $8.58 for one half year, due May 9th, 1909.
   Countersigned May 10th, 1909, at Fargo, No. Dak.
                                        W. A. Smith, Manager.
                            Per J. C. Whitney, Agency Cashier.
W. J. Easton, Secretary.

that the provisions of the said life insurance policy are all in printed language, prepared by the defendant, and that the warranty on the part of the insured that he would not commit suicide during the period stated was in printed language, prepared by the defendant in making out its form of application for insurance; that the said Charles E. Rich committed suicide on the 11th day of May, 1909, dying on the said date; that the said Charles E. Rich, at the time that he com-

mitted suicide was sane; that according to the terms of the policy, thirty days grace were allowed the insured in which to pay any premium after the first premium, and all premiums were payable in advance at the home office of the defendant, or to any agent of the company, upon delivery on or before date due of a receipt signed by the secretary of the company or other executive officer, and countersigned by said agent; that the plaintiff herein is the sister of the insured; that after the death of the insured the said plaintiff made due proof of the death of the said Charles E. Rich; said proof was duly received and accepted by the defendant as sufficient proof of his death on the 4th day of June, 1909, and was passed upon by the defendant at that time; that the defendant disclaimed any liability under the terms of said policy, and refused to pay the insurance to the plaintiff, upon the ground that the defendant was not liable, because that the insured committed suicide "during the period of one year after the issuance of the said policy as set forth in the provision of the application and policy," and for grounds other than sufficiency of the proofs of loss; that this action was commenced on or about September 1, 1909.

In the trial of the case the defendant submitted the testimony of one E. L. Richter, who testified in substance that he had been acquainted with the insured for between twenty-five and thirty years, and that witness and insured were good friends, which friendship continued up to the day of his death; that on the 27th day of April, 1909, witness had a conversation with the insured at the office of the witness, at Larimore, at which time they were discussing the financial affairs of the insured, and some life insurance policies which the insured had, payable to his daughter, Hattie E. Rich; that the insured said to him that he wanted to raise money on his life insurance policies in order to remedy his financial difficulties; that at said time the witness and the insured discussed the suicide clause in the policies, and the insured stated that the clause ran out somewhere between the 7th and the 9th of May, and that as soon as the said clause expired he, the insured, would kill himself, but that he wanted to wait until after the year had expired, so as to be sure that his daughter would get his insurance; and that he would commit suicide within a day or two after the expiration of the suicide clause; that the insured did not appear to have been drinking or be intoxicated at that time, and that

witness did not, at any time, communicate any of these matters to the plaintiff herein, nor to a brother of the insured, and that at said time he was pretty well acquainted with the brother and had met the plaintiff.

Upon the evidence in this case the trial court found, as a matter of law, that the plaintiff was entitled to judgment for the full amount of the policy, to wit: $1,000, with interest thereon from the 4th day of June, 1909, at 7 per cent, and judgment was accordingly entered. A motion for a new trial was made and denied, and the defendant prosecutes its appeal to this court from the said order for judgment and order denying motion for a new trial, and in its assignments of error set forth that the trial court erred, in failing to find as true the facts alleged in ¶¶ 5, 7 and 8, of the defendant's answer; in making the conclusion of law in which the plaintiff is entitled to judgment as hereinbefore set forth, in ordering and granting judgment in favor of the plaintiff and against the defendant; and in additional assignment of error sets forth that the court erred in denying the motion for a new trial on the following grounds: 1. The evidence is insufficient to support the judgment, in that it appears affirmatively by the pleadings and evidence in said case that Charles E. Rich, the insured, committed suicide within the period of one year from the issuance of the policy of the insured; and that the policy of insurance issued to said insured thus became void and unenforceable.

2. The evidence is insufficient to support the judgment in that it appears affirmatively in the testimony in said action, that the insured committed a deliberate fraud against the insurer, and by his deliberate act while sane determined the rights and liabilities of the parties to the contract of insurance; and that the said insured intentionally and for the fraudulent purpose of creating a liability against the said defendant company, insurer, waited until the expiration of one year from the date of said policy for the purpose of creating a liability thereunder against the said defendant company, insurer, and that by reason of said fraud said policy became void and unenforceable.

Two propositions are presented to us by the appellant, quoting from its brief: "First, is the defendant company liable upon a policy of insurance in case of the death of the insured by suicide in less than a year from the time of the issuance of the policy, although an artificial period of more than one year is produced because of the dating back

of the policy at the request of and for the benefit of the insured?" Second, "Is the defendant company liable upon a contract of insurance, because of death by suicide of the insured, where it appears that such act of suicide was premeditated and the date of the liability, if any, of the defendant company is fixed by the voluntary and fraudulent purpose and act of the insured?"

At the outset we may state that the facts show the dating back of the policy from the date of the application, May 18, 1908, to the alleged date of the execution of the policy; to wit, May 9, 1908. While done at the request of the insured, it was done in accordance with general rules and instructions issued to agents in general, and not for the sole and specific benefit of this insured, nor was it for the sole benefit of the insured as against the company; for while the insured received a reduction of some 48 cents in his premium for the first year, yet the company received the benefit of insuring the insured during eight days already passed when there could be no risk assumed by the company in fact.

The first proposition presented to us raises the question of the date of the policy. On its face the policy is stated "to be executed this 9th day of May, 1908." The general rule is that a policy of life insurance, if delivered, takes effect from its date unless it be otherwise stated. See May, Ins. 2 ed. § 400. If it be alleged that the contract takes effect at some other date, then evidence of this contrary intent must be shown. Of course, the burden of introducing such evidence would be upon him who alleges it.

In 25 Cyc. Law & Proc. p. 742, the rule is laid down that the risk is presumed to commence from the date of the policy, in the absence of any provision or agreement to the contrary. This rule is the same as the one set forth in the case of Union Ins. Co. v. American F. Ins. Co. 107 Cal. 328, 28 L.R.A. 692, 48 Am. St. Rep. 140, 40 Pac. 431. In Rayburn v. Pennsylvania Casualty Co. 138 N. C. 379, 107 Am. St. Rep. 548, 50 S. E. 762, the court says: "Where insurance is applied for and afterwards a policy is issued and delivered, it is based on the status of the insured at the time of the application, and the company assumes the risk after the date of the policy." A careful examination of the record fails to disclose any intent contrary to this rule. If we assume, without reference to § 5948 of the Revised Codes, that the defendant is in position to raise the question as to the actual date of the

policy, and the evidence is that the actual date is some time subsequent to the stated date of execution, yet it appears clearly from the record that it was the intent of the parties to date the policy as of the date stated. The company makes provision for such dating. The insured in this case was forty-two years six months and five days old, and accordingly was ratable of the insurance age of forty-three years. Had he been six days younger, he would have been ratable of the insurance age of forty-two years, which would have given him a slight reduction in his premium for the year 1908 of 24 cents semiannually. To get this benefit, the policy was dated back some nine days, which would be as of three or four days less than forty-two years and six months old. The company got the benefit of this, for it is a certainty of life on which they assumed no risk, and for which they were paid. Clearly it was the intention of the parties to make the date as of the 9th of May, 1908. The contract therefore was made as of May 9th, 1908.

Appellant says the fact that the company agreed to the dating back does not estop them from raising this question, because the dating back was but for one purpose, and that was the fixing of the date of payment of the premiums. We cannot agree with this in its entirety. The purpose for the dating back of the contract may have been to get a little less rate of premium; but the fact stands that the contract itself was dated back; that is, the whole contract, and not the portion alone dealing with the insurance rate. If the contention of the appellant were correct, the purpose could have been obtained by simply making the contract as of its correct date, but lowering the rate of insurance. Instead of doing this, the company maintains its uniform rate, but takes a retrospective risk.

Section 5948 of the Revised Codes of 1905, says: "An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment, so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid." Indeed it has been held, even, in the absence of such a statute and in a case where a policy of insurance contained a provision, that the company should not be liable until the premium should be actually paid to the company, where also the policy contained a receipt for the premium that the company was estopped from setting up the nonpayment of the premium for the purpose of avoiding the instrument. The company might actually recover the premium, but, so

far as the contract was concerned, they were prohibited from setting up a nonpayment of the premium. Basch v. Humboldt Mut. F. & M. Ins. Co. 35 N. J. L. 429.

In the policy involved there is a distinct acknowledgment of the receipt of the premium, and therefore the defendant company cannot be permitted to offer any evidence to show that the policy was not binding. This expression, "to make the policy binding," necessarily means the contract in its entirety, as agreed upon by the parties, and it becomes immaterial whether the date is artificial or actual. The company cannot be heard to say that this actual contract entered into between the parties is not, for all contractual purposes, binding and conclusive.

That a company may contract to insure for a period already passed is well settled. See Kerr, Ins. pp. 100, 101, where it is stated "that the term of insurance may by stipulation begin upon the date of the application, and the policy when issued may be dated prior to the date of its execution, and cover risks which have occurred prior to that time. The intent of the parties, when ascertainable, should control." See also American Horse Ins. Co. v. Patterson, 28 Ind. 17; Philadelphia L. Ins. Co. v. American Life & Health Ins. Co. 23 Pa. 65.

In Hallock v. Commercial Ins. Co. 26 N. J. L. 268, where a company took a risk to commence previous to the date of the policy, the court said: "The company would be as much bound as if the loss occurred after the policy was delivered." This was a case involving a fire insurance policy, where the property was burned without the knowledge of either party, after the agreement to insure was entered into and before the policy was issued. See also Commercial Ins. Co. v. Hallock, 27 N. J. L. 645, 72 Am. Dec. 379.

In Lightbody v. North American Ins. Co. 23 Wend. 18, it was held the company was liable on the policy even though not delivered for several days, and the property was destroyed before the date, but after the agreement to insure was entered into, and the policy was not delivered until two or three weeks after the date. To the same effect is Whitaker v. Farmers' Union Ins. Co. 29 Barb. 312.

In the case of Davenport v. Peoria M. & F. Ins. Co. 17 Iowa, 276, the court, independent of any statutory provision, states the rule, that "the doctrine that an act done at one time may take effect as of a prior time by relation back . . . is applicable to contracts of insur-

ance, the agreement to insure being the principal act; the payment of the premium and the formal execution of the policy may be concurrent therewith or subsequent thereto." Here was a case where a policy was not issued at the time the agreement to insure was made, and between the time of the agreement and the time of the issuance of the policy the property was destroyed, without knowledge of either party. There was no fraud or concealment by the party insured, and the question became simply one of what was the risk taken by the company. The court says: "The defendant seeks to avoid liability on this policy, by showing by parol that the policy was not in fact executed or delivered until the day after its date. The plaintiff then shows by parol that such antedate was not the result of accident or mistake, but was done intentionally and in pursuance of a previous contract between the parties. This parol testimony was clearly competent; . . . both that parties did exactly what they intended to do, and have put in writing, in a legal binding form, the mutual contract, between them and the obligations of the respective parties. Such a contract thus fairly entered into, both good morals and good law require shall be enforced, and the losses, if any, must fall on that party which for a valuable consideration voluntarily assumed the possible burdens of them."

That is the exact situation in the case at bar. The appellant made provision for and consented to a dating back of the policy, thus making it of the date it bears, rather than the actual date, receiving therefor the absolute assurance that they took no risk in that period dated back. The same rule is upheld in the case of Kentucky Mut. L. Ins. Co. v. Jenks, 5 Ind. 96–103. The appellant argues that, under the contract, parties could not have had in contemplation the dating back of the period during which the insured could not commit suicide, and alleges that because, in § 6064 of the Revised Codes of 1905, the legislature says: "It shall be no defense after the policy has been in force one year that the insured committed suicide." This must necessarily mean one year from the actual date of the policy. The purpose of that section is to prevent an insurance company from making a longer period than one year during which the defense of suicide may be set up, but does not prevent the company and the insured from shortening the period. Surely it would not be argued, if a company saw fit to eliminate the suicide exemption entirely or to expressly provide that the policy was incontestable from date as against the defense

of suicide, that, under the provisions of this section, the company could yet set up the defense of suicide if it occurred at any time within a year from the time the policy came in force. The company took premiums for that period, fixed the date of the payment of the premiums as of that date, and made no provision in the contract limiting the dating back solely to the payment of premiums. It is well settled that, where there is any uncertainty in the terms of an insurance policy, the policy will be construed most favorably for the insured, as the language used in the policy is the language of the insuring company. The company prepares the blanks, dictates the terms, and it would be idle to say that the insured need not accept the terms unless he sees fit. See Schroeder v. Trade Ins. Co. 109 Ill. 157; also Niagara F. Ins. Co. v. Scammon, 100 Ill. 644.

In its second proposition, defendant seeks to avoid liability, because the act of suicide was premeditated and the date of the liability of the company was fixed by the voluntary and fraudulent purpose and act of the insured. This is based solely upon the testimony of the witness Richter. It is clear from a reading of the policy that the company and the insured contemplated the possibility of the commission of suicide by the insured while he was sane. The fact is admitted that the insured committed suicide while sane. Therefore, of a surety his act was premeditated, but such premeditation was one of the risks assumed by the company, and if his suicide could be premeditated, though the period of premeditation may be short, the liability of the company must necessarily be fixed by the voluntary purpose and act of the insured.

To allow the company to set up the defense of suicide during the sanity of the insured, and the fixing of the liability by the voluntary purpose and act of the insured, would be practically to wipe out the provision fixed by our statute that the defense of suicide could not be set up after the policy had been in force one year. Since the insured was sane when he committed suicide, his act must necessarily have been voluntary and premeditated. There is nothing to show that the premeditation extended to a period prior to the application for the insurance; but even if it did, death by suicide is one of the risks that the company insures against.

Appellant claims that this premeditated act of suicide was fraudulent as against the company, and that the fraud is shown by the testi-

mony of the witness Richter. According to the testimony of this witness, however, the policy about which the insured was talking could not have been the policy in question, but was a policy which was payable to his daughter. But, independent of this fact, there is no merit in this contention. The liability of the company is not fixed by the time the intent to commit suicide becomes fixed and permanent in the mind, but is determined by the fact of suicide. Who knows the vagaries of the human mind? Who can tell how often between the 27th of April, 1909, and the 11th day of May, 1909, the insured contemplated and abandoned the purpose of suicide? He was shown to have been in financial difficulties; but there is no testimony showing of how long standing. Several times a day he may have determined to commit suicide, and then abandoned his determination.

Appellant in his brief says: "Plaintiff cannot recover in the face of this testimony upon general principles alone, for, if the testimony proves anything, it proves that the insured violated the contract, in that he intentionally created a liability against the defendant company. It certainly cannot be contended that the fixing of liability under a contract is within the sole power and control of one of the parties." In support of this he cites Hopkins v. Northwestern Life Assur. Co. (C. C.) 94 Fed. 729, and other cases. An analysis of this case shows that it was decided upon the assumption that the policy was silent entirely as concerning suicide. The court held, in that case, self-murder was not within the contemplation of the parties. This, however, is not the state of facts in the case at bar. The possibility of self-murder was taken into account, and, whether sane or insane, the insured was limited to a period of one year, and the company therefore obligated itself to pay, in case of suicide after the period of a year. It cannot be heard now to disclaim this liability because of the possibility that the insured may have contemplated suicide before the expiration of the year. The appellant cites Ritter v. Mutual L. Ins. Co. 169 U. S. 139, 42 L. ed. 693, 18 Sup. Ct. Rep. 300. The policy in that case contained a clause that the insured warranted and agreed that he would not die by his own act, whether sane or insane, during the period of two years, which period was to begin on the 6th day of November, 1891. The insured committed suicide October 5, 1892. The court, however, goes on to decide that suicide is not in the contemplation of the parties when they enter into a policy of life insurance, stat-

ing that, "if a person should apply for a policy expressly providing that the company should pay the sum named if, or in the event that, the assured at any time during the continuance of the contract committed self-destruction, being at the time of sound mind, it is reasonably certain that the application would be instantly rejected. It is impossible to suppose that an application of that character would be granted. If experience justifies this view, it would follow that a policy stipulating generally for the payment of the sum named in it, upon the death of the assured, should not be interpreted as intended to cover the event of death caused, directly and intentionally, by self-destruction whilst the assured was in sound mind, but only death occurring in the ordinary course of his life." This opinion was written in 1897, and it is a sufficient answer to this *dictum* to say that almost all of the insurance companies now write policies where the possibility of self-destruction while sane is clearly taken into account, and is among the risks assumed, some companies making a time limit and others not. Many states have statutes similar to our § 6064. It is no defense to say that life insurance imports a mutual agreement, whereby the assured is to do all in his power to prevent liability. The company knew that, so far as the agreement with the insured was concerned, and so far as their risks assumed were concerned, he was at liberty to commit suicide while sane, at any time after the period of limitation fixed by the contract. The morality of the fact is not involved in this case. The insured, by his self-destruction, has put himself beyond the realm of human law, and the morality of his act will be judged by a different court.

The event which happened having been without the contemplation of the parties, and the parties having voluntarily shortened the actual period during which, if the act occurred, the company would not be liable, we hold that the time limitation of the act of suicide had expired, at the time of the self-destruction of the insured, and that the company thereupon became liable for the full amount of the policy.

It follows, therefore, that the lower court committed no error in refusing to find as facts the statements set forth in paragraphs 5, 7, and 8 of the defendant's answer, as desired by the defendant, and the judgment of the lower court is, therefore, affirmed.

Honorable A. G. BURR, Judge of the Ninth Judicial District, sitting with the court by request.