**HORWITZ et ux. v. NEW YORK LIFE INS. CO.**

No. 7698.

Circuit Court of Appeals, Ninth Circuit.

Nov. 12, 1935.

Rehearing Denied Dec. 16, 1935.

Marvin K. Holland and J. Kenneth Kaseberg, both of Portland, Or., for appellants.

Huntington, Wilson & Davis, of Portland, Or., for appellee.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree which for fraudulent statements in the application canceled and required the surrender of (a) an agreement insuring against permanent total disability amending appellee's life insurance policy No. 11-112-224, hereinafter called the amended policy, and (b) an insurance on appellant's life and also (c) against such disability, contained in a policy No. 11-330-499, hereinafter called the combined policy. The decree further ordered (d) the return of premiums of the amended policy and (e) of the combined policy. It further decided that the insured take nothing by his counterclaim for unpaid monthly benefits for a claimed total disability under (f) the amended policy and (g) the combined policy.

The provisions of the several insurances differ from each other and the ap-

peal requires the disposition of the seven issues decided, which we consider in the above order.

■ (a) *Disability insurance of the amended policy is incontestable for fraud in application.* The question involved is whether the two-year period of the incontestable clause in the amendment had expired prior to the filing of the bill, and, if so, whether the indemnity insurance of the amendment is contestable for fraud after the expiration of the two years. The incontestable clause of the indemnity amendment to the life policy reads as follows:

"This Agreement shall be subject to the general terms and conditions of said Policy and shall be incontestable after two years from its *date of issue* except for non-payment of premium and except as to the above conditions under which said disability benefits shall not be effective.

"In Witness Whereof the New York Life Insurance Company has caused this Agreement to be signed this 6th day of February, 1931."

The first question is whether a contest for *fraud* in the application survives the two-year period along with the contests "as to the above conditions." Above this paragraph the amendment contains a dozen specific contestable conditions to the right to receive disability benefits, but in this specific enumeration fraud in the application is not mentioned. Such specific express provisions exclude construing into the incontestable clause a contest on the ground of fraud in the application, commenced after two years elapsed. Mutual Life Insurance Company of N. Y. v. Markowitz (C.C.A.9th) 78 F.(2d) 396; Ness v. Mutual Life Insurance Co. (C.C.A.) 70 F.(2d) 59, 61. We hold that after the two years the period of contest for fraud in the application expired.

■ The remaining question regarding the cancellation of the disability amendment is whether the bill for its cancellation was filed before the two years from the *policy's "date of issue."* In construing the clause, appellee suggests that it was required by the Pennsylvania law to place the clause in the insurance agreement. It claims that since it is there by compulsion and not at the option of the company's draftsman, the rule of interpretation of ambiguous policy provisions in favor of the insured does not apply. An examination of the statute, however, shows that the Pennsylvania requirement concerning the insertion of certain provisions as to incontestability is confined to "life or endowment insurance," and does not include insurance against disability. Purdon's Pa.Stats.Ann. title 40, § 510. The usual rule requiring the construction of ambiguous provisions in favor of the insured applies to the indemnity insurance.

The amendment to the policy described the incontestability period as follows: "This *Agreement* shall be subject to the general terms and conditions of said Policy and shall be incontestable after two years from *its* date of issue," etc. If there is any ambiguity as to whether or not the words *"its* date of issue" refer to the previous word "Agreement" or to the words "said Policy," the ambiguity must be resolved in favor of the latter construction, for, so construed, the contestable period expired at the date most favorable to the insured. We therefore hold that the "two years from its date of issue" are from the *date of issue* of the *policy* and not from the date of the *signing* of the *amendment.*

The policy provides that "The Contract. The Policy and the application therefor, copy of which is attached hereto, *constitute the entire contract."* The application portion of the entire contract contains a mutual agreement as to the date of the policy. That agreement reads as follows:

"Application to the New York Life Insurance Company. I, Charles Horwitz * * * Apply to the New York Life Insurance Company for insurance as follows: * * * 3. Plan of Insurance. * * * Date Policy *as of date policy is written.* * * *

"It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, * * * then said insurance shall take effect and be in force under and *subject to the provisions of the policy applied for from and after the time this application is made,*

whether the policy be delivered to and received by the applicant or not."

The significant portion of the agreement in the application is as to the policy's date. The agreement is "Date policy as of *date policy is written.*"

The pertinent portions of the policy concerning the date it was "written" are as follows:

"This Policy takes effect as of the Twenty-seventh day of May Nineteen Hundred and Thirty, which day is the anniversary of the Policy. * * *

"In Witness Whereof the New York Life Insurance Company has caused this contract to be *signed* this *Twenty-seventh* day of May Nineteen Hundred and Thirty."

Since the contract must have been written before it was signed, it is apparent that the date of the policy must be May 27, 1930, or earlier.

The parties agree, and the lower court found that the appellee executed and issued the policy to the appellant "on or about May 27, 1930." It thus appears that whether we consider the "date of issue," which starts the running of the two years, as the date when the policy was delivered to the insured, or the date when it was written, that date, May 27, 1930, is more than two years before January 6, 1933, when the bill for its cancellation was filed. So far as concerns the cancellation of the amended policy No. 11-112-224, the decree must be reversed and the bill ordered to be dismissed.

 (b) *The life insurance of the "Combined Policy" is incontestable for fraud in the application.* The incontestable clause was drafted in the policy under a requirement of the law of Pennsylvania as follows:

"Uniform policy provisions. No policy of life or endowment insurance, except * * * shall be issued or delivered by any stock or mutual life insurance company in this Commonwealth unless it contains, *in substance,* the following provisions: * * *

"(c) A provision that the policy shall be incontestable after it has been in force, during the lifetime of the insured, two years from its date of issue, except for non-payment of premiums, and for engag-

ing in military or naval service in time of war without the consent in writing of an executive officer of the company." (Italics inserted.) Purdon's Pennsylvania Stats.Ann. title 40, § 510.

It will be noted that the clause need not be drafted in the exact verbiage of paragraph (c), but that the drafting shall contain "in substance" the provisions of that paragraph. The company's draftsman composed the provisions required by paragraph (c) as follows: "Incontestability.—This Policy shall be incontestable *after two years from its date of issue* except for non-payment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits."

The insurance company contends that if there be any ambiguity in the term "after two years from its date of issue" the usual rule of interpretation of a policy's provisions favorable to the insured does not apply, because the statute and not the act of the company's draftsman causes the ambiguity. We hold this contention without merit because it is apparent that it would be a "substantial" compliance with the statutory requirement if the company had avoided the ambiguity involved in the words "date of issue" by following them with the words, to wit, "from the date of application," or the "anniversary date of the policy," or "from the date on which it is purported on its face to be signed," or "the date of its issuance and receipt by the insured." The ambiguity arises from the act of the draftsman in so framing the policy that, under conditions likely to arise, a question of construction also arises as to which of the four circumstances in the creation of the insurance contract fixes the "date of issue." We therefore hold that in resolving the doubt, if any, caused by the drafting of the policy it should be resolved in favor of the insured. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416.

That the interpretation of the phrase "after two years from its date of issue" raises a question of doubt and that "the doubt must be resolved in the way most favorable to the insured" was held by the Supreme Court in Mutual Life Insurance Co. v. Hurni Packing Co., 263 U.S. 167, 175, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102.

The following are the portions of the insurance contract contained in the combined policy pertinent to "its date of issue" as commencing the two year contestable period:

"The Contract.—The Policy and *the application therefor,* a copy of which is attached hereto, *constitute the entire contract.* * * *

"This contract is made in consideration of the application therefor and of the payment in advance of the sum of $518.48, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this Policy for the period terminating on the *Twenty-ninth day of September Nineteen Hundred and Thirty-one,* and of a like sum on said *date* and every Twelve calendar months thereafter during the life of the Insured. * * *

"This Policy *takes effect as of the Twenty-ninth day of September Nineteen Hundred and Thirty,* which day is the anniversary of the Policy. * * *

"In Witness Whereof the New York Life Insurance Company has caused this contract to be *signed* this *Seventh day of January Nineteen Hundred and Thirty-one.* * * *

"Incontestability.—This Policy shall be incontestable *after two years from its date of issue* except for non-payment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits."

The application, constituting a part of the "entire contract," contains the following agreement: "I, Charles Horwitz * * * Apply to the New York Life Insurance Company for Insurance as Follows: * * * *Date Policy as of Sep. 29, 1930.* * * * It is mutually agreed * * * said insurance shall take effect and be in force under and subject *to the provisions of the policy applied for* from and after the *time this application is made,* whether the policy *be delivered to* and *received by* the applicant or not."

We thus see that, as in the amended policy considered above, the contestable period is for two years from the "date of issue" of the policy. The contract here differs, in that the testimonium clause states the policy was "signed" on January 7, 1931, and in that its delivery by the company to the insured was on January 14, 1931, both dates less than two years before the contest for fraud here initiated.

The mutual agreement in the application is different in form from the amended policy, but has a similar effect. The agreement as to the policy date is "Date policy *as of Sept. 29,* 1930," that is more than two years before January 6, 1933, the date of filing the bill. This date of September 29, 1930, also appears in the policy as its "anniversary" date which determines the applicant's then age and hence rate of premium. It fixes the day on which the future premiums are to be paid. It is a determining factor in the loan and surrender values and the dividend paying date. It determines the life of the policy itself if any premium is unpaid, for it starts the running of the days of grace before the insurance terminates.

So far as any date is of importance, the "anniversary" date is paramount. It determines every feature of the insurance contracted for that can be affected by a date. Insurance is the only purpose of the contract.

In view of the fact that it was "mutually agreed" between the parties that the insurance should be "subject to the provisions of the policy applied for" and that the application was to *"Date* policy *as of* Sep. 29, 1930," the date of January 7, 1931, in its testimonium clause must be deemed "as of," that is, as if it were, September 29, 1930. The mutual agreement for a policy so dated would have no effect whatsoever unless given this interpretation, and we accept it as necessary, regardless of the rule of construction favoring the insured. The contract must be construed **as if** the testimonium date was September 29, 1930.

The question then is, Which of the two dates is the date of the policy's "issue"? That in the testimonium clause, which is also the anniversary date and is more than two years prior to the filing of the bill; or, the date of actual delivery, within the two year period of contestability?

That the testimonium date is the date of issue was decided by the Supreme Court in Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 175, 176, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102. The incontestability clause construed,

read as follows: "Incontestability.—This policy shall be incontestable, except for nonpayment of premiums, provided two years shall have elapsed *from its date of issue.*" (Italics inserted.)

The policy there was applied for on September 2, 1915. It was in fact executed on September 7th, but antedated as of August 23, 1915, and was delivered to insured about September 13th. The application provided that "the applicant upon request may have the policy antedated for a period not to exceed six months." Underneath the heading of the application there was written the direction: "Date policy, August 23, 1915; age, 47." The testimonium clause, followed by the signatures of the officials, read: "In witness whereof the company has caused this policy to be executed this 23d day of August, 1915." The policy acknowledged the receipt of the first premium and provided that a like amount should be paid "upon each 23d day of August hereafter until the death of the insured."

In deciding that the common testimonium and anniversary date was the date of issue of the policy, the Supreme Court held: "Here the words, referring to the written policy, are 'from its date of issue.' While the question, it must be conceded, is not certainly free from reasonable doubt, yet, having in mind the rule first above stated, that in such case the doubt must be resolved in the way most favorable to the insured, we conclude that the words refer not to the time of actual execution of the policy or the time of its delivery but to the date of issue as specified in the policy itself. Wood v. American Yeoman, 148 Iowa, 400, 403, 404, 126 N.W. 949; Anderson v. Mutual Life Insurance Co., 164 Cal. 712, 130 P. 726, Ann.Cas. 1914B, 903; Harrington v. Mutual Life Insurance Co., 21 N.D. 447, 131 N.W. 246, 34 L.R.A.(N.S.) 373; Yesler v. Seattle, 1 Wash. 308, 322, 323, 25 P. 1014. It was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue; and this, in our opinion, is what they did. Plainly their agreement was effective to govern the amount of the premiums and the time of their future payment, reducing the former and shortening the latter, and, in the absence of words evincing a contrary intent, we are unable to avoid the conclusion that it was likewise effective in respect of other provisions of the policy, including the one here in question. This conclusion is fortified by a consideration of the precise words employed, which are 'from *its* [that is, the policy's] date of issue,' or, in other words, from the date of issue as specified in the policy. It was within the power of the insurance company if it meant otherwise, to say so in plain terms. Not having done so, it must accept the consequences resulting from the fact that the doubt for which its own lack of clearness was responsible must be resolved against it."

We therefore hold that the decree rescinding the life provisions of the combined policy No. 11-330-499 must be reversed.

(c) *The exceptions of the incontestability clause of the combined policy do not except the disability insurance into contest for fraud in the application.* The question remains whether, after the two years have elapsed, the disability insurance of the policy is still contestable for fraud in the application. The policy is similar to that in New York Life Ins. Co. v. Kaufman (C.C.A.9th) 78 F.(2d) 398, certiorari denied 56 S.Ct. 149, 80 L.Ed. ——, Oct. 21, 1935. The incontestability clause is identical as to disability benefits: "Incontestability.—This Policy shall be incontestable after two years from its date of issue except for non-payment of premium and *except as to provisions and conditions relating to Disability Benefits.*"

There is the same grouping of "provisions and conditions relating to Disability Benefits" in smaller type and blocked in by heavy margins. There is the same distinction between the provisions of the "policy" and the "application." In addition, the blocked off grouping contains a provision that the disability benefits shall be paid only "provided that * * * such total disability did not arise from bodily injury or disease occurring before the insurance under this Policy took effect, and known to the Insured, but not disclosed in the application for the insurance under this Policy."

This provision describes a failure to disclose an illness existing *before the application,* which constituted fraudulent sup-

pression within the meaning of the provision of the application. The defense of fraud in the application would involve the same facts as the policy provision. True, the burden of proof is different, but the implication from the identity of fact strengthens the construction that "provisions and conditions" of the policy excepted into contest by the clause do not include fraud in the application. The decree in so far as it rescinds the disability provisions of the combined policy must be reversed.

(d) and (e) *The premiums paid by the insured need not be restored.* Since none of the three insurances in the two policies is subject to cancellation, the order of the decree for the restoration of the premiums paid by the insured must be reversed.

■ (f) and (g) *On the issue of whether defendant proved total disablement occurring subsequently to the date of the disability insurances, which disablement did not arise from bodily injury or disease occurring before the agreement took effect, and known to the insured, we find for the defendant.* The dismissal of the bill does not preclude our consideration of the issue raised by the counterclaim for disability benefits under the identical provisions of the two disability insurances, despite the fact that the issue is purely one at common law. The court in equity retains this jurisdiction for a law cause of a cross-complaint or counterclaim less than $3,000, though the dismissed cause is brought on the equity side. Kirby v. American Soda Fountain Co., 194 U.S. 141, 24 S.Ct. 619, 48 L.Ed. 911; New York Life Insurance Company v. Kaufman (C.C.A.9th) 78 F.(2d) 398. The issue tendered by the insured was upon his right to recover indemnity payments for the period after the insurance company had notified him of its election to rescind. The pertinent provision for the payment of both disability insurances are for the amended policy: "Upon receipt by the Company at its Home Office of due proof, as hereinafter provided, that the Insured has become totally disabled by bodily injury or disease so that he is and will be thereby wholly prevented from performing any work, following any occupation or engaging in any business for remuneration or profit, and that such disability has already continued uninter-

ruptedly for a period of at least four months (such total disability of such duration being presumed to be permanent only for the purpose of determining liability hereunder), and provided that (1) such total disability began before default in payment of premium under said Policy (or, in event of default, not later than the last day of grace) and that (2) such total disability began before the anniversary of said Policy on which the Insured's * * * age at nearest birthday is 60, and prior to the maturity of said Policy, and that (3) such total disability did not arise from bodily injury or disease occurring before this Agreement took effect, and known to the Insured, but not disclosed in the application for the benefits under this Agreement, and that (4) such total disability has been continuous from the beginning of the period of disability claimed"; and for the combined policy, the same, save (3) reads as follows: "(3) such total disability did not arise from bodily injury or disease occurring before the insurance under this Policy took effect, and known to the Insured, but not disclosed in the application for the insurance under this Policy, and that" the insured properly alleged total permanent disability and alleged compliance with the negative provisions above set forth. These allegations were denied by the insurance company. On the issues thus raised, evidence was offered by both parties.

■ The District Court decided on the cancellation of the insurance because of the false representations made by the insured concerning consultations with and treatment by his physician prior to the creation of the insurance contract, but it makes no finding upon the question whether the insured knew the nature of the disease causing the total disablement of the insured prior to applying for the disability insurance. The parties were entitled to a finding upon this issue and the failure of the court to do so, on the theory, apparently, that the issue disappeared in the rescinding of the policies, requires a reversal of that portion of the decree deciding it against appellant.

■ The question then arises as to the proper disposition here of these issues. Defendant was not obliged to assert a legal counterclaim in an equitable action,

but, having done so, he has waived his right to a jury trial and put the entire case in equity. American Mills Co. v. American Surety Co., 260 U.S. 360, 366, 43 S.Ct. 149, 67 L.Ed. 306; Clifton v. Tomb (C.C.A.) 21 F.(2d) 893, 898. On an equity appeal, where no findings of fact or insufficient findings are made in the court of first instance, the appellate tribunal has power either to send the case back for further disposition or to make findings itself and decree accordingly. Chicago, Milwaukee, etc., R. Co. v. Tompkins, 176 U.S. 167, 179, 20 S.Ct. 336, 44 L.Ed. 417. Inasmuch as both parties had full opportunity to present all their material evidence on this issue and did present proof sufficient for a finding, we choose to resolve the issue here.

■ As to this issue, the burden of proof rested on the defendant cross-complainant Horwitz, both because he was the moving party and because the relevant facts were peculiarly within his knowledge. Crotty v. Union Mutual Life Ins. Co., 144 U.S. 621, 12 S.Ct. 749, 36 L.Ed. 566.

■ The company agrees that the insured was totally disabled by disease, and that the disability satisfied the above requirements except as to provision (3). The company's physician testified, and the weight of the evidence shows, that the disabling disease in "sclerosis of the nervous system."

The company challenges the insured's claim that this affliction was not known to him when he made his application in the one case on January 2, 1931, and in the other on February 2, 1931. We find that the defendant has sustained his burden of proof that he did not have this knowledge at those times.

The defendant's medical experts testified that this disease caused a progressive sclerosis of the whole nervous system, and their diagnosis receives the support of the company's expert, who described the disease as multiple neuritis. Insured's denial that he knew he was menaced by such an affliction is supported by the uncontradicted evidence of a number of his associates in the junk business. They testified that before and for some time after the applications he engaged in hard labor in the junk yard, working full days with a heavy sledge breaking up superannuated automobiles.

Prior to the applications he consulted his own physician at various times for a cold, once for a swelling of his ankles, for shortening of breath, and a pain in the region of the heart. Each time his heart was examined it was found sound. His physician's examination not only failed to disclose this progressive and incurable hardening of the nerves, but found nothing serious whatsoever. His first diagnosis of a serious illness, in July, 1931, some months after application, was not a hardening of the nerves, but of the arteries. The insured consulted other physicians many months after the applications as his disease progressed. In the intimacies of that contact he stated to none of them that he knew that he had hardening of the nerves. The inference is compelling that their patient told the truth at the trial when he testified that the disease causing his disability was not known to him, and that he did not know he had any serious affliction when he applied for the insurance.

■ Appellant is therefore entitled to a decree for his disability benefits of $100 per month from four months after November 7, 1931, up to the time of filing his answer. Under the insurance contract, the company agreed to waive the payment of each premium falling due after the commencement of such total disability and during its continuance. The proofs show that $544.92 was paid for premiums subsequent to his disability. To these should be added interest at the rate of 6 per cent. per annum from the date each disability payment fell due and each premium was paid.

■ Under the Oregon law the insured is entitled to his attorneys' fees to be fixed in amount by the court. Oregon Code § 46-134, as amended by Laws 1931, p. 620. The rules of the District Court adopt the law of Oregon with reference to court costs. Such a provision of the Oregon law, by way of costs, is an incident of the remedy and is controlled by the law of the forum. Supreme Lodge, Knights of Pythias, v. Meyer, 198 U.S. 508, 517, 25 S.Ct. 754, 49 L.Ed. 1146; Fidelity Mutual Life Ass'n v. Mettler, 185 U.S. 308, 322, 22 S.Ct. 662, 46 L.Ed. 922. The insured is entitled to a decree for an amount of attorneys' fees to be

fixed by this court which has finally tried the issues. The reply to the cross-complaint raised also the issue of the validity of the policies. The excellent briefs and arguments presented here and the record of the trial below show that the insured has been represented by able counsel. We find that the insured is entitled to recover from the company $1,500 as his attorneys' fees.

The District Court is instructed to enter a decree dismissing the bill and awarding the above several items of recovery to the cross-complainants together with their costs here and below.

Decree reversed.

### On Petition for Rehearing.

PER CURIAM.

The petition seeks rehearing on the issue of cancelling the disability feature of the amended $2,000 policy on the ground that the trial judge decided that the suit was commenced within the two-year contestable period because, it claims, although it does not appear in the record, this was conceded below by the defendants.

The record itself, at page 88, shows affirmatively that instead of this issue being decided below on any admission of the parties, it was resolved on the court's own construction of the policy in the following finding and conclusion of law: "That on account of the incontestability clause contained in said amendment as above set out, plaintiff was entitled to commence suit to secure the cancellation of said amendment and the surrender of the same before the expiration of two years from the date of issue of said *amendment*. That the date of issue of said *amendment* was February 6, 1931; that the above entitled suit was commenced by filing complaint herein on January 6, 1933."

Our opinion holds this error, since our construction of the contract made the contestable period expire two years from May 27, 1930, the date of issue of the policy, and hence prior to the filing of the bill. The petition offers no argument on this point not considered in the opinion. We cannot now reopen the case and substitute for the above finding and conclusion in the record supplied us a different one, to the effect that "defendants *admit* the suit was brought in time."

Petition denied.