LAND, Justice.
 

 On August 6, 1932, defendant company issued to John P. Douglas a policy On his life in-the sum of $5,000, payable to the estate of the assured.
 

 On September 17, 1932, the assured assigned this policy to plaintiff to secure payment for groceries, rent, and loans, amounting, at the death of the assured, to $262; and also to secure the additional sum of $119.10, advanced to him by plaintiff for payment of the first semiannual premium on the policy.
 

 Douglas was killed in the city of New Orleans on September 30, 1932. He died from gunshot wounds in the back.
 

 Plaintiff, as assignee, brought this suit to recover the face value of the policy in the sum of $5,000.
 

 Defendant company refused to pay the policy to plaintiff, after due proof of the death of the assured and after demand for payment, on the following grounds:
 

 (a) Because of misrepresentation as to assured’s age and health in the application of insurance.
 

 (b) Because policy constituted an attempt by plaintiff to gamble on life of assured.
 

 (c)Because assignment was void since defendant company never accepted the same.
 

 John P. Douglas, at his death, left a sister, Miss Lillian E. Douglas, and a daughter, May Everett Douglas, his sole heir at law. Both are of the full age of majority, and both are residents of the city of New Orleans. The policy of $5,000 payable to his estate constitutes the sole asset in his succession. Decedent also left an olographic will in which he instituted his sister universal legatee. As decedent failed to name an executor in his last will and testament, his sister, Miss Lillian E. Douglas, was appointed dative testamentary executrix by the civil district court for the parish of Orleans. She has intervened in this suit as legal representative of the succession of John P. Douglas, and claims the full face of the policy in the sum of $5,000.
 

 Intervener alleges the validity of the policy, but attacks the assignment by assured to plaintiff on the following grounds:
 

 (a) That plaintiff, as assignee, had no insurable interest in the life of John P. Douglas, the assured.
 

 (b) That the assignment was without serious consideration.
 

 (c) That defendant company never accepted the same.
 

 (d) That the assignment constituted an attempt by plaintiff to gamble on the life of the assured.
 

 (e) That if the assignment is held to be valid and binding, the intervener, in the alternative, contends that it is a mere security for the indebtedness of the assured to plaintiff, and that plaintiff could not, in any
 
 *939
 
 event, recover more than the amount of that indebtedness.
 

 After trial had upon these issues, the civil district court for the parish of Orleans held that the policy issued by defendant company to John P. Douglas was valid, and that its assignment by the assured to plaintiff was also valid, to the extent of the money advanced by plaintiff to the assured, and rendered judgment in favor of the intervener, dative testamentary executrix, in the full sum of $5,000, the full face of the policy, with legal interest from April 29, 1933, until paid and all costs.
 

 The civil district court also decreed in this judgment that the intervener, dative testamentary executrix, should pay to plaintiff, out of the proceeds of the $5,000, the sum of $381.10, money advanced by plaintiff to the assured, with legal interest from April 29, 1933, until paid, and that plaintiff have judgment against defendant, Metropolitan Life Insurance Company, for the costs of these proceedings.
 

 From this judgment, defendant company has appealed suspensively, and plaintiff has appealed devolutively. Intervener has neither appealed nor answered the appeals.
 

 Plaintiff has filed in this court an exception of no right and of no cause of action to the petition of intervention.
 

 (1) That the assured did not intend that plaintiff should have the full amount of the policy at his death is made evident by the fact that the assured made his estate the beneficiary and not the plaintiff. Besides, the assured left a sister and a daughter and disposed of his estate in an olographic will, thereby clearly intending that they should receive the benefit of whatever was left after the payment of debts.
 

 (2) Although plaintiff cannot recover the full amount of the policy, it is conceded, in the alternative, that he has an insurable interest in the life’ of the assured, to the extent of the advances made by plaintiff to him. That this sum amounts to $381.10 is clearly shown by the testimony of Travia, plaintiff, and by Vincent Verciglio, who worked at Travia’s restaurant. Sup.Tr., pp. 5, 6-9, 9-11.
 

 Plaintiff therefore had an insurable interest in the life of the assured as to this indebtedness, and the assignment was therefore made for valuable consideration.
 

 (3) We find no proof in the record that the assignment was an attempt by plaintiff to gamble on the life of the assured. The mere fact of assignment of a life insurance policy for a sum less than the face of the policy does not constitute proof that it is a gamble on the life of the assured. Should we so hold, it would not be possible for the assured to obtain any loan at all, upon the assignment of the policy as security for money advanced, or to be advanced to the assured.
 

 (4) Nor are we impressed with the contention that the assignment was void because not accepted by defendant company. The assignment was acknowledged before a notary public in the city of New Orleans September 17, 1932. It was made on a form supplied by defendant company and was filed with its local office and its New York office. Douglas was killed on September 30, 1932, and proof of death was filed
 
 *941
 
 October 3, 1932. Subseqitently defendant company found that, in the assignment, Travia, the plaintiff, was inadvertently described as a “debtor,” instead of a “creditor” of the assured, and requested Travia to correct this mistake by affidavit, which was done on October 4th. The affidavit was supplied and admittedly received by defendant company. Sup.Tr., p. 3. The affidavit further set forth that Travia loaned money to decedent both before and after the policy issued.
 

 Nowhere in the policy or in the assignment is any requirement that it must be accepted by defendant company. The assignment provides on its face, and the policy provides in clause 7, that it shall not be “binding upon the Company” unless it be
 
 “filed with the Company”
 
 at its home office, and it is admitted in article III of defendant company’s answer that it was so filed.
 

 There was strict compliance with the company’s rules; the assignment was on their form, in the manner provided, and was filed with the home office, and is therefore binding on defendant company.
 

 (5) What has been said above in this opinion also disposes of two of the grounds of attack made by defendant' company upon the validity of the policy and of the assignment in this case:
 

 (b) Because the policy constituted an attempt by plaintiff to gamble on the life of the assured.
 

 (c) Because assignment was void since defendant company never accepted same.
 

 We will now take up the first and remaining ground of attack by defendant company upon the validity of the policy:
 

 (a)Because of misrepresentation as to assured’s age and health.
 

 In connection with the point raised, the provisions of the policy to be considered are the following:
 

 “In Witness Whereof, the Metropolitan Life Insurance .Company has caused this Policy to be executed this
 
 6th day of August, 1932,
 
 which is
 
 the date of issue
 
 of this Policy.” (Italics ours.)
 

 “Provisions and Benefits
 

 “4. Entire Contract. This Policy and the application therefor constitutes the entire contract between the parties, and all statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this Policy or be used in defense of a claim hereunder unless it be contained in the application therefor and a copy of such application is attached to this Policy when issued.”
 

 The “application” is divided into three severable parts:
 

 (a) The application proper, “Part A,” giving name, address, age, occupation, insurance applied for, etc., is dated
 
 August 4, 1932,
 
 is signed by assured, and witnessed by the agent.
 

 (b) The application “Part B,” the medical examination, is dated
 
 August 9, 1932,
 
 three days
 
 subsequent
 
 to the date of the issuance of the policy,
 
 August 6,1932.
 

 (c) The application “Part C,” the confidential report of the examining physician, is dated the same day as “Part B,”
 
 August 9,1932.
 

 
 *943
 
 Each part of the application was a separate double sheet, and each bore its own date line and signatures.
 

 It is therefore apparent that the policy, dated
 
 August 6, 1932,
 
 was dated after the assured’s application, of date
 
 August 4, 1932,
 
 but before the medical examination, dated
 
 August 9,1932.
 

 Since the policy itself specifically provides that
 
 its date, August 6,1932,
 
 shall be deemed “the date of issue,” this date must be taken for all purposes affecting the rights of the company and of the assured thereunder as the governing date, as expressly held in Mutual Life Insurance Company v. Hurni Packing Company, 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102.
 

 The policy, having issued without medical examination, comes clearly within the purview of the following statutory provisions:
 

 Act No. 97 of 1908, as amended by Act No. 195 of 1932, and Act No. 134 of 1934 provide that whenever a life insurance policy has been issued without medical examination (as in the instant case), it shall be presumed that knowledge of the agent concerning the health, habits, or occupation of 'the 'uisúred has been disclosed to his principal, and that the company has waived its right to claim forfeiture on the ground that the assured did not make full and true answers in the application.
 

 Act No. 52 of 1906, as amended by Act No. 227 of 1916, provides that the policy when issued must contain the entire contract, and all statements of the insured in the absence of fraud shall be deemed representations and that no statement not indorsed upon or attached to the policy when issued shall be used in defense to a claim thereunder.
 

 The offer of defendant company, therefore, to prove by parol evidence in this case that
 
 August 9, 1932,
 
 was the date of the issuance of the policy, when the policy itself declares that
 
 August 6, 1932,
 
 is the date of its issuance, was properly overruled and rejected.
 

 In Mutual Life Insurance Company v. Hurni Packing Company, cited supra, the Supreme Court of the United States said: “The determination of -the case depends upon the meaning of a clause in the policy as follows : ‘Incontestability. — This policy shall be incontestable, except for nonpayment of premiums, provided two years shall have elapsed from its date of issue.’ The trial court held that the words ‘its date of issue’ were to be construed as referring to the date upon the face of the policy, viz. August 23, 1915, and this was also the view of the Court of Appeals. * * * It is contended on behalf of the insurance company: (1) That the period of incontestability did not begin to run until the delivery of the policy, or, in any event, until its actual execution on September 7th; and (2). * *
 
 * ”
 

 “First. The rule is settled that in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it. [Citing Authorities]”
 

 
 *945
 
 “The word ‘date’ is used frequently to designate the actual time when an event takes place, but, as applied to written instruments, its primary signification is the time specified therein. Indeed this is the meaning which its derivation (datus-given) most naturally suggests. In Bement v. Trenton Locomotive & Machine Mfg. Co., 32 N.J.Law, 513, 515, 516, it is said: ‘The primary signification-of the word “date” is not time in the abstract nor time taken absolutely, but, as its derivation plainly indicates, time “given” or specified, time in some way ascertained and fixed; this is the sense in which the word is commonly used. When we speak of the date of a deed, we do not mean the time when it was actually executed, but the time of its execution, as given or stated in the deed itself. The date of an item, or of a charge in a book account, is not necessarily the time when the article charged was, in fact, furnished, but simply the time given or set down in the account, in connection with .such charge.’ * * *
 

 “Here the words, referring to the written policy, are ‘from its date of issue.’ While the question, it must be conceded, is not certainly free from reasonable doubt, yet, having in mind the rule first above stated, that in such case the doubt must be resolved in the way most favorable to the insured, we conclude that the words refer not to the time of actual execution of the policy or the time of its delivery, but to the date of issue as specified in the policy itself. Wood v. Brotherhood of American Yeomen, 148 Iowa, 400, 403, 404, 126 N.W. 949; Anderson v. Mutual L. Ins. Co., 164 Cal. 712, 130 P. 726, Ann.Cas.l914B, 903; Harrington v. Mutual L. Ins. Co., 21 N.D. 447, 131 N.W. 246, 34 L.R.A.(N.S.) 373; Yesler v. Seattle, 1 Wash. 308, 322, 323, 25 P. 1014. It was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue; and this, in' our opinion, is what they did. Plainly their agreement was effective to govern the amount of the premiums and the time of their future payment, reducing the former and shortening the latter, and, in the absence of words evincing a contrary intent, we are unable to avoid the conclusion that it was likewise effective in respect of other provisions of the policy, including the one here in question. This conclusion is fortified by a consideration of the precise words employed, which are ‘from its (that is, the policy’s) date of issue,’ or, in other words, from the date of issue as specified in the policy. It was within the power of the insurance company if it meant otherwise, to say so in plain terms. Not having done so, it must accept the consequences resulting from the fact that the doubt for which its own lack of clearness was responsible must be resolved against it.”
 

 Defendant company has pleaded as a special defense in article XII of its original answer that the policy “was issued in consideration of the assured’s application therefor * * * ; that said written application was made by the said John P. Douglas
 
 under date of August 4, 1932,
 
 and in said application said John P. Douglas gave the following answers to the questions propounded therein, as follows,” etc. (Italics ours.)
 

 However, at the trial, defendant company sought to show that the alleged misrepresentations were made in a document dated
 
 *947
 

 August
 
 9, 1932, without any allegation to support the proof offered.
 

 Our conclusion is that the attack made upon the validity of the policy in this case is without merit, and that the policy is valid and binding upon defendant company.
 

 (6) Plaintiff has filed in this court an exception of no right and no cause of action, on the ground that the petition of intervention changes the issues between the original parties to the suit and raises new ones, in that intervener, for the first time in this suit, attacks the validity of the assignment sued upon for the reasons:
 

 1. That same is void for lack of insurable interest.
 

 2. That same is void for lack of consideration.
 

 3. That same is void for being a wagering contract.
 

 4. That if same is valid, it is purely a pledge, none of which issues are tendered by defendant, and without which intervener’s demand is without foundation in fact and in law.
 

 It is provided in article 389 of the Code of Practice of this state that: “An intervention or interpleader is a demand by which a third person requires to be permitted to become a party in a suit between other persons; by joining the plaintiff in claiming the same thing, or something connected with it, or by uniting with the defendant in resisting the claims of the plaintiff, or, where his interest requires it, by opposing both.”
 

 The grounds upon which intervener attacks the assignment upon which plaintiff relies are all set forth in the original petition of intervention filed in the lower court. In the main suit, plaintiff asserts the validity of both the policy of insurance and of the assignment, while defendant attacks the validity of both. We therefore fail to see that any new issues have been raised by the intervener, in attacking the validity of the assignment, although such attack may be based upon grounds, all of which are not relied upon by defendant company.
 

 Besides, intervener has not joined the plaintiff in this case, in claiming the same thing, nor has intervener united with defendant company in resisting the claims of plaintiff, as is plainly shown by the allegations of the petition of intervention. Tr., pp. 23-26. But intervener, as she has the clear right so to do, has opposed the claim of plaintiff as to the validity of the assignment, and has also opposed the claim of defendant company as to the invalidity of the policy of insurance.
 

 Our, conclusion is that the exception of no right or cause of action, filed by plaintiff in this court, is without merit.
 

 For the reasons assigned, it is ordered that the exception of no right and of no cause of action, filed by plaintiff in this court, be overruled.
 

 It is further ordered that the judgment appealed from be affirmed, and that defendant, Metropolitan Life Insurance Company, pay all of the costs of these proceedings in this court and in the lower court.
 

 O’NIELL, C. J., and HIGGINS, J., absent.