47 So.2d 133 (1950)
SUN UNDERWRITERS INS. CO.
v.
STANDARD ACCIDENT INS. CO. OF DETROIT, MICH., et al.
CASCIO et al.
v.
ADLER et al.
Nos. 19389, 19394.
Court of Appeal of Louisiana, Orleans.
May 29, 1950.
*134 Miazza & Drury, New Orleans, for Sun Underwriters Ins. Co., plaintiff-appellant.
M. C. Scharff, New Orleans, for Mrs. Anna Cascio, wife of and Andrew M. Bucaro, plaintiffs and appellants.
Walter M. Barnett, Jr., New Orleans, for Mrs. Coleman E. Adler and Standard Acc. Ins. Co., defendants-appellees.
JANVIER, Judge.
These two cases, which are consolidated, grow out of an automobile collision which occurred at the corner of Constance and Seventh Streets, in New Orleans, on the night of November 3, 1947, at about eight o'clock. The two automobiles involved were a Chrysler car belonging to Mrs. *135 Coleman E. Adler and driven by her chauffeur, John Poleate, and a Dodge sedan owned by Andrew M. Bucaro and driven at the time by Mrs. Bucaro. Mrs. Bucaro sustained physical injuries and the Bucaro car was badly damaged. Standard Accident Insurance Company of Detroit was the liability and property damage insurer of Mrs. Adler and Sun Underwriters Insurance Company had issued to Bucaro a policy of collision insurance.
One of the suits was brought by Mr. and Mrs. Bucaro against Mrs. Adler, John Poleate and Standard Accident Insurance Company, Mrs. Bucaro claiming $20,000.00 for her physical injuries and pain and suffering; Mr. Bucaro claiming $906.83, for hospital and medical expenses for Mrs. Bucaro and net loss sustained by him as a result of the damage to his automobile, after deducting from the loss the amount recovered by him under his collision insurance policy.
In the other suit Sun Underwriters Insurance Company having settled with Bucaro for the damage sustained by his car and having secured a subrogation from him, sought judgment against the same defendants for $1126.52, as the net loss sustained after deducting from the amount it paid to Bucaro the salvage recovered from the sale of the damaged automobile.
While defendants denied that the accident resulted from negligence on the part of Poleate, the principal defense of Mrs. Adler is that, at the time, Poleate was not acting within the scope of his employment and that, therefore, she is not liable, and the principal defense of Standard Accident Insurance Company is that Poleate was using the car without the permission of Mrs. Adler and that, therefore, the omnibus clause of the policy has no application.
In the suit of Sun Underwriters Insurance Company, service of citation was not made on Poleate until a few days before the case went to trial and, therefore, the plaintiffs conceded that it could not, at that time, obtain judgment against Poleate. In the suit of Mr. and Mrs. Bucaro, Poleate was not cited and, therefore, the plaintiffs concede that in that suit they could not obtain judgment against him.
In the district court there were judgments in favor of Mrs. Adler and the Standard Accident Insurance Company dismissing both suits as to those defendants, and in each case the right of the plaintiffs to proceed further against Poleate was reserved. From these judgments the plaintiffs have appealed.
Mrs. Adler, one of the defendants, a widow, had in her employ John Poleate as a domestic servant and chauffeur. She had secured from the Standard Accident Insurance Company a policy of public liability and property damage insurance. Poleate, without the knowledge of Mrs. Adler, and in violation of her general instructions, used the car for a purpose of his own and, while doing so, became involved in this intersectional collision with the other automobile owned by Andrew M. Bucaro and driven by Mrs. Bucaro.
In the district court it was found that the accident was due to the negligence of Poleate and the record abundantly justifies this conclusion. In fact, no really serious effort was made to prove the contrary, and, as we have said, the principal defenses of the insurer and of Mrs. Adler are that Poleate was not acting within the scope of his employment at the time and did not have the actual permission of Mrs. Adler to use the automobile. On behalf of Mrs. Adler it is maintained that, since Poleate was not acting within the scope of his employment, she is not liable, and on behalf of the insurer, it is contended that, since Poleate did not have the permission of Mrs. Adler to use the car, the omnibus clause of the policy has no application and the insurer is not liable.
We have already stated that Poleate was using the car on a mission of his own, without the knowledge of Mrs. Adler and in violation of her general instructions, and on this question there is no controversy. Consequently, there can be no liability in Mrs. Adler. Accordingly, there is no doubt as to the correctness of the judgments insofar as they dismiss the suits as against her.
*136 The only serious controversy is over the question of whether the omnibus clause in the insurance policy is applicable to the facts found here. That much discussed clause provides that the word "insured" when used in the policy shall include not only the named insured, that is, the person to whom the policy is issued, but shall also include, among others, "any person while using the automobile, * * * provided the actual use of the automobile is with the permission of the named insured."
The sole question is, then, whether, under the facts shown here, the "actual use" of the car was with the permission of the named insured who, of course, was Mrs. Adler. Let us investigate these facts.
Mrs. Adler resided in the Pontchartrain Apartments, located at the corner of St. Charles Avenue and Josephine Street, in New Orleans and bearing Municipal Number 2031 St. Charles Avenue. She formerly owned the residence which was directly across Josephine Street from the side of the Pontchartrain Apartments, and she garaged her automobile in a garage which was located in the rear yard of her former residence.
Poleate, Mrs. Adler's chauffeur, had certain household duties to perform in addition to the driving of the automobile. Mrs. Adler, because of her physical condition, often retired very early, frequently at 6:30 P.M., and when she did so, she customarily allowed Poleate to leave as soon as she found that she had no further need for his services.
Mrs. Adler had two sets of keys for her automobile. She says that she kept one herself and required Poleate to put the other on a table in her apartment. On the day previous to that on which the accident occurred, Mrs. Adler noticed that Poleate had failed to return the second set of keys to the table, and, on the evening of the accident, she had scolded him severely and he had promised her that he would never again keep the keys himself and would always return them to the table.
On the afternoon of the day on which the accident ocurred, Mrs. Adler had been in the shopping district of New Orleans in her car, Poleate being the driver. At about 4:30 o'clock in the afternoon she returned to her apartment, alighted at the front door, and told Poleate to park the car and to come to the apartment as she might require his services there. Poleate drove the car into the yard across Josephine Street from the apartment, but he did not place it in the garage as he thought that possibly Mrs. Adler might need it again later on that day. After performing some minor service for Mrs. Adler in her apartment, he was told by her that he might leave as she did not require his services again that evening. He went to the automobile, but instead of driving it into the garage, he drove it into the street, departed on his private mission, and, while on his way back to return the car to the garage, became involved, at about 8:00 P.M., in the intersectional collision at the corner of Seventh and Constance Streets, a mile or more away from the garage in which he should have stored the car.
There are many disagreements among the various courts which have considered the effect of the omnibus clause and over the proper interpretation to be given to the words "provided the use of the automobile is with the permission of the named insured", as it was originally used in the earlier policies, and over the same clause with the insertion of the word "actual" before the word "use" as it now appears in most policies. Many courts held that such a policy had no application, unless the person using the car had the permission of the named insured to do with the car the very thing for which it was being used at the time of the accident. Many others held that if the initial permission to use the car had been obtained, then the omnibus clause has application no matter how far the user may have departed from the purpose which was contemplated when the permission was given. These two views, and a possible middle or compromise view, are stated as follows in 15 Tulane Law Review at page 424:
"* * * there appear to be two conflicting, but `certain', doctrines, with a middle course followed in many of the states, resulting in uncertainty as to the *137 rights and obligations of the parties litigant. These three doctrines may be summarized thus:
"1. That only `permission,' express or implied, at the outset, or initially, is necessary.
"2. That such `initial' permission alone does not suffice and that the nature of the particular deviation will be considered, with `material' deviations destroying that initial permission. The various courts in this group differ widely on what are `material' deviations.
"3. That the particular use of the automobile at the moment of the accident must have been with the express or implied `permission' of the assured."
That Louisiana is among those jurisdictions in which the initial permission is sufficient to make the policy applicable, regardless of the use to which the car may be later put, is evident. In 15 Tulane Law Review, at page 425, appears the following:
"There is no longer any doubt as to which doctrine Louisiana follows if the `former' omnibus clause is involved. The Supreme Court in construing such a clause held:
"`We therefore conclude that the permission of the assured to Hall to use the car in the first instance, irrespective of the use to which he put it while in his possession, was "permission" of the assured within the meaning and contemplation of the "omnibus clause" and the insurer is therefore liable to plaintiff thereunder.'"
What we have just above said has reference to the policy clause as it was used by the insurers prior to the decision of the Supreme Court in Parks v. Hall, 189 La. 849, 181 So. 191. And it was obviously for the purpose of making impossible the result which was reached in Parks v. Hall and other similar decisions that the insurers thereafter began to insert in their policies the word "actual" before the word "use" and to provide that the omnibus clause should have no application unless the "actual use" was with the permission of the named insured.
We referred to this purpose in our original decision in Haeuser v. Aetna Casualty & Surety Co., La.App., 185 So. 493, and in that original decision held that there could be no coverage unless the use to which the car was being devoted at the time of the accident was the use which was contemplated by the owner when the permission to use the car was given. However, on rehearing, we abandoned that view (the author of this opinion dissenting), and held that the insertion of the word "actual" had actually no effect whatever and that even when the policy contains the clause as it is now written, there is coverage if initial permission is obtained, regardless of the use to which the car may be put. See Haeuser v. Aetna Casualty & Surety Co., La.App., 187 So. 684.
In Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, 748, the Supreme Court again considered this question and, with two justices dissenting, held that initial permission is all that is necessary and that there is coverage, regardless of the use to which the car may be put. In the Waits case an employee, who was charged with the use of a bus used in transporting employees and who was instructed that, under no circumstances, must he use it except for the purpose of transporting employees, and that he must never take it out at night after it had been put away, took out the bus, got up a party, drove many miles to a saloon, and was involved in an accident on the return trip. The question there was whether the actual use to which the bus was being put at the time of the accident was with the permission of the insured. And the Supreme Court held that it was, saying: "* * * Selby had the initial permission of the insured to use the car and it was placed in his possession and under his control. He alone used the car. It was in his possession and under his control at the time he took it from the place where it was parked and at the time of the accident. Under such circumstances any instructions given Selby as to the use of the car or whether there had been a deviation from the instructions are immaterial and of no moment. This case comes clearly within the rule laid down in the Parks case."
*138 Again, and very recently, the question was considered by the Supreme Court in Dominguez v. American Casualty Co., ___ La.___, 46 So.2d 744, two Justices dissenting, one concurring and one being recused wherein the Court held the omnibus clause applicable.
In Farnet v. De Cuers, La.App., 195 So. 797, we considered facts remarkably similar to those found here. There De Cuers, an employee of the Louisiana State Board of Health, was assigned a car for his use. He was not to use it except in the business of the Board of Health. He usually stored it in a garage. On the day on which the accident occurred, De Cuers had left the car parked in the street, while attending a social affair at the residence of a neighbor, who lived next door to him. While at that social affair, he met Farnet and, as they were leaving, he told Farnet he would be glad to drive him home. While he was driving Farnet home, the accident occurred, and Farnet brought suit against the insurer, contending that the omnibus clause had application. We held that, since it was the duty of De Cuers to take the car from its parked position on the street and to drive it into the garage, he had moved it with the permission of the insured and that, therefore, the fact that he did not take it to the garage, but went off on a mission of his own, did not alter the situation and that, under the decisions to which we have referred, the omnibus clause had application.
Counsel for defendants vehemently protests that no one of the cases cited and relied on by plaintiffs presents facts similar to those here disclosed. He says, in the first place, that the record does not conclusively show that Poleate did not place the car in the garage and then later remove it, and, in the second place, that even if Poleate had not placed the car in Mrs. Adler's garage but had left it outside the garage in the yard, nevertheless it was in a place which was under the custody of Mrs. Adler and that, therefore, it should be held that Poleate had surrendered his custody of the car to Mrs. Adler; that he had, in fact, turned it over to her and that his subsequent taking of it amounted to a theft.
We have no doubt at all that if, in fact, it could be held that his taking of the car amounted to a theft, there could be no recovery under the omnibus clause, for while that particular question was not presented in Dominguez v. American Casualty Company, supra, the Supreme Court very clearly said that the omnibus clause should not apply where the use of the car had resulted from theft: "It has been argued that under the jurisprudence of this state as established by the Waits case that the employee could take the vehicle hundreds of miles away, and even be guilty of theft, and yet the Omnibus Clause would still be effective. The answer to that is that our doctrine is based upon implied permission, that is, where an employee has been given custody and control of the motor vehicle some discretion on his part in its use must be assumed. It is not, therefore, without limitation and certainly where the vehicle has been returned to the custody of the employer or his agent, and he retakes it, or where the action of the employee is such after getting control of the vehicle as to constitute theft, permission could not be reasonably implied."
In answer to the first of these contentions, we point to the record as containing no word in contradiction of the testimony of Poleate that he did not place the car in the garage, but left it in the yard so that it might be more readily accessible if Mrs. Adler should need it later in the evening. Counsel says that we should not believe Poleate because, so he contends, the record proves him to be a liar and a thief. Even if the record showed both of these things, it would not necessarily result that we must conclude that of everything he said practically the exact opposite was true. The district judge evidently believed Poleate's statement on this question, for he discussed the fact that Poleate had to move the car only a few feet in order to put it into the garage. We conclude that on the record before us we cannot do otherwise than hold that the car had not been placed in the garage when Poleate returned to it and set out on a personal mission.
*139 Nor can we agree with counsel in his second contention, that when Poleate put the car in the yard, he surrendered control of it and thus terminated the permission to use which resulted from his employment as chauffeur by Mrs. Adler. It is no doubt true that when he put the car in the yard and went into the apartment to perform his household duties, Mrs. Adler believed that the car had already been placed in the garage and put away for the night, but she believed that because she knew that she was not going out again on that evening, and no doubt believed that she had told Poleate to put the car in the garage. But we have no doubt that it is equally true that if Poleate, when he was told by Mrs. Adler that he could leave, had said to her that the car had been left in the yard so that he might use it again if she needed it, she would have told him to put it in the garage before leaving. She very clearly testified that it was Poleate's duty to put it in the garage every night.
Since the actual fact was that the car was not in the garage, and since the actual fact also was that Mrs. Adler wished it to be put in the garage every night, she would have told him to put it in the garage on that night had he told her that it was not there and, therefore, when Poleate entered the car, he unquestionably had the implied permission of Mrs. Adler to do so for the purpose of putting it away. And we think this, in spite of the fact that Mrs. Adler had just reprimanded him for taking the keys on the previous night and had told him never to do it again. If Poleate had that implied permission, then the fact that he did not put the car in the garage but departed on a mission of his own is of no importance. The situation would have been different had he placed the car in the garage and then removed it to go on a mission of his own, for then there could have been no initial permission to touch the car at all.
These conclusions are reached after a full consideration of all of the cases cited and after giving much thought to the well considered reasons for judgment given by the district judge. He, too, discussed the cases cited and realized that our courts have gone very far in extending the coverage of such a policy where there has been initial permission, but he refused to extend the doctrine further and held that permission to move a car from one spot in a private yard to a garage in the same yard did not constitute such permission as to permit the application of the omnibus clause. He said: "Permission to drive a car from one part of the owner's premises to another part to be garaged, such as from a yard to a garage a few feet away, or from a driveway on the owner's premises to the garage, is not the permission for initial use as is contemplated by the omnibus clause and our jurisprudence interpreting it."
We sympathize with the views of the district judge and believe that the clause has been extended far beyond the limit foreseen by those who framed it, but we, as an intermediate appellate court, have not the power to enforce a conclusion not sanctioned by our Supreme Court. We feel that the established jurisprudence requires a holding that the permission to use the car at all makes the omnibus clause applicable to practically any subsequent use to which the car may be put.
Since the car was not being used in the scope of Poleate's employment by Mrs. Adler, the necessary result is that there is no liability in her to any of the plaintiffs, but for the reasons given, we feel that judgment should be rendered in favor of the plaintiffs and against the Standard Accident Insurance Company, and we, therefore, turn to the record to determine the amount of each respective loss sustained.
Mr. Bucaro showed that he had incurred medical and hospital expenses totalling $411.83, in connection with the injuries of Mrs. Bucaro and he is entitled to this amount. He claims, in addition, $445.00 as the difference between the cost of the Dodge automobile which was destroyed and the amount which he recovered from his insurer. We do not think that he is entitled to recover this amount.
He was paid $2005.52, which the record shows was the sound value of a similar *140 Dodge automobile at the time of the loss. The record also shows that the automobile had cost $2350.00 and that a new car at the time of the loss would have cost $2450.00. Bucaro uses the second figure, $2450, in an effort to establish his right to this additional $445.00. We cannot determine from the record just how old his car was, though since it was a 1947 Dodge and the accident occurred on November 3, 1947, it could not have been very old. Nevertheless, there must have been some depreciation. Under the evidence which is before us, we cannot do otherwise than to deny him recovery on this second item.
Dr. Loria testified that when he examined Mrs. Bucaro he found: "No. 1 Contusion and abrasion of the Forehead; No. 2  Concussion of the Brain; No. 3  Contusion of the Scalp and Right Mastoid Area; No. 4Contusion and Abrasion of the Left Knee; No. 5  Contusion and Abrasion of the Left Forearm; No. 6  Possible Fracture of the Left Sixth Rib; and No. 7Contusion and Abrasion of the Sacrum and Back."
Fortunately, it developed that none of the injuries proved to be permanent and that apparently X-rays developed the fact that there was no fracture, although Dr. Loria said that the mere fact that it did not show in the X-ray did not prove that there were no "difficulties."
Mrs. Bucaro remained in Hotel Dieu from November 3 to November 9 and the doctor testified that she suffered a great deal of pain. We think that for the injuries she sustained an award of $1,000.00 is adequate.
Sun Underwriters Insurance Company claimed $1126.52. The record shows that the estimated cost of repairing the Bucaro car was $1332.24, but that instead of repairing it, the company settled with Bucaro for $2005.52, and then recovered from the salvage of the damaged automobile $879.00. This would have left a net loss which they claim of $1126.52. It appears, however, that there was a $50.00 deductible clause in the collision insurance policy and ordinarily this would have been deducted by them from the amount paid Bucaro and Bucaro would have been entitled to add this $50.00 item to his claim for damages. However, it appears that the insurer instead of deducting the $50.00 item, settled with Bucaro for the total loss. They are therefore entitled to recover that $50.00 also, or in other words, to recover $1126.52, being the net amount of that loss.
It is therefore ordered, adjudged and decreed that the judgment in the suit of Sun Underwriters Insurance Company v. Standard Accident Insurance Company of Detroit et al., No. 19,389 of the docket of this court, insofar as it dismissed the suit against Standard Accident Insurance Company be and it is annulled, avoided and reversed and that there now be judgment rendered in favor of Sun Underwriters Insurance Company and against Standard Accident Insurance Company for $1126.52, with legal interest from judicial demand, and it is further ordered, adjudged and decreed that in all other respects the judgment appealed from in that case be, and it is affirmed, Standard Accident Insurance Company to pay all costs.
It is further ordered, adjudged and decreed that the judgment in the suit of Mrs. Anna Cascio, wife of and Andrew M. Bucaro v. Mrs. Coleman E. Adler et al., No. 19,394 of the docket of this court, insofar as it dismisses their suit against Standard Accident Insurance Company be, and it is, annulled, avoided and reversed, and that there now be judgment in favor of Andrew M. Bucaro and against Standard Accident Insurance Company for the sum of $411.83, with legal interest from judicial demand, and in favor of Mrs. Anna Cascio, wife of Andrew M. Bucaro, and against Standard Accident Insurance Company in the full sum of $1,000.00, with legal interest from judicial demand. It is further ordered that in all other respects, the judgment be and it is affirmed; Standard Accident Insurance Company to pay all costs.
Affirmed in part; reversed in part.
REGAN, J., concurs in decree.