119 So.2d 530 (1960)
J. T. GARLAND, Plaintiff-Appellee,
v.
AUDUBON INSURANCE COMPANY, Defendant-Appellant.
No. 4975.
Court of Appeal of Louisiana, First Circuit.
March 21, 1960.
Rehearing Denied April 25, 1960.
Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for appellant.
Laycock & Stewart, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, TATE, FRUGE and LANDRY, JJ.
*531 ELLIS, Judge.
This is a suit for damages arising out of an automobile accident occurring in Little Rock, Arkansas on October 22, 1957 between the vehicles of J. T. Garland and a Mrs. B. C. Bearry. Mrs. Bearry's vehicle was being driven at the time of the accident by a Mr. Edward Black who, for the purposes of this litigation was admittedly negligent in causing the damages to plaintiff.
Judgment was obtained in the Circuit Court of Pulaski County, Arkansas against Mr. Black and Mrs. Bearry for the damages by the plaintiff herein.
After the judgment was obtained in the Arkansas Court, demands were made against the insurance carrier for Mrs. Bearry to no avail. Suit was filed in the Parish of East Baton Rouge, the domicile of the defendant insurance company for the full amount of damages awarded in the Arkansas judgment against Mr. Black and Mrs. Bearry and penalties.
Defendants filed a special defense that the policy did not cover the Buick automobile when it was being driven by one Edward Black. They denied coverage for the damages suffered in the accident occurring while the automobile was being driven by Edward Black since they alleged the named insured was Mr. B. C. Bearry and that he had not given Mr. Black permission to drive the car.
Defendants filed an alternative defense that in the event Mrs. Carrie Lee Bearry's authorizing Mr. Black to drive the automobile afforded coverage under the terms of the policy that she failed and refused to give assistance and cooperation, required by the terms of the policy and that she specifically falsified the accident report and gave false information to the defendant.
After a trial on the merits judgment was rendered in favor of the plaintiff in the full sum of $1941.43 together with 6% per annum interest thereon from December 31, 1957, until paid, $23.10 costs of court in the Arkansas suit, $110.00 for taking the depositions, plus the costs of this suit. From this judgment the defendants have appealed and plaintiffs have answered, reurging an award of penalties and attorneys fees under LSA-R.S. 22:658.
The main question involved is whether or not the policy issued by the defendant to Beauford C. Bearry covers the driver of the automobile at the time of the accident. The omnibus clause of the insurance contract reads as follows:
"`Persons insured: the following are insureds under Part. 1:
"`(a) with respect to the owned automobile,
"`(1) the named insured and any resident of the same household.
"`(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured * * *.'" (Emphasis ours.)
In order to pass upon this question the facts must first be set forth concerning the use of the automobile, the ownership of the automobile and the type of permission granted by the named insured in the policy.
The named insured, Mr. Beauford C. Bearry, was married to one of the co-defendants, Mrs. Carrie Lee Bearry at the time the insurance was taken out on the 1956 Buick covered by the policy in question, Mr. and Mrs. Bearry lived in Baton Rouge, Louisiana, but at the time the insurance was taken out they were living separate and apart, however, they had not obtained a formal separation of bed and board. For this reason the insurance agent that issued the policy advised Mrs. Bearry to name her husband as the insured in the policy. Mr. Bearry was therefore the named insured at the suggestion of the insurance agent.
*532 The undisputed facts indicate that although he was the named insured he had little or no control over the use of the automobile itself. Mrs. Bearry testified that she bought the automobile and it had only been used by Mr. Bearry on weekends and that finally when he put a dent in the automobile she denied him the right to use it any more. Whether she had this right Bearry did not oppose the sentence. Bearry purchased a second automobile and from that time on the exclusive use and control of the Buick was by his wife. In the spring of 1957 Mrs. Bearry moved to Arkansas. On the day that Mrs. Bearry and here two children were preparing to move to Arkansas, Mr. Bearry came by and helped them pack and made no mention of the use of the automobile when they left. He did make payments for the automobile in lieu of alimony and support for their two children. The payments on the automobile and the insurance for the automobile was made to the Standard Oil Company's credit union, the place of employment of Mr. Bearry. Under these facts Bearry, the named insured, can only be considered as having given unlimited control and possession of the car to Mrs. Bearry without any restrictions as to its use by her individually or by a permitee with her authority or consent.
After Mrs. Bearry had moved to Arkansas she renewed an acquaintance that she had with a Mr. Black, the co-defendant in the suit in Arkansas. She and Mr. Black became good friends and on many days he would use her automobile, driving her to work then taking the automobile for his own use to go to his place of employment and then returning to pick her up when she got off from work. This practice was established with the full consent and approval of Mrs. Bearry. On the date of the accident, Mrs. Bearry, as well as her children, testified that she called the co-defendant, Mr. Black, informing him that she would drive by to pick him up, then he could take her to her work and come back to take her children to school. She also requested that he keep the automobile that morning and pick her up at noon time.
After Black ran the errands for her in her automobile that morning and went to work in the automobile it rained and he did not have to work any more that morning. He then left work, went into town and met a friend to while away the time while he waited to pick Mrs. Bearry up at noon time. While he was with this friend, he shared a few drinks of Vodka, drinking almost a half pint with the friend. Then he dropped the friend off near his home. He then was en route to Mrs. Bearry's place of employment and as he approached the Main Street Bridge he struck plaintiff's automobile from the rear.
Mr. Black was arrested for driving while intoxicated and placed in jail. It was not until that night that Mrs. Bearry was notified of the accident and found out that Black had been placed in jail. She was quite upset and called for the assistance of a Mrs. Frettwell who took her down town to attend to her business of adjusting the insurance claim, making the statements for the insurance company and making arrangements with the garage to repair her automobile. Mrs. Bearry was quite upset at the time and when she made her original statements to the insurance company she stated therein that she was in the automobile with Black at the time of the accident. There is no question but that this was a false statement and she frankly admitted this in her testimony. However, she further testified that following the original statement given to the insurance company that she was so nervous and upset that she went outside and told Mrs. Frettwell that she had given a false statement. She was so nervous that she had to lie down on the back seat for awhile to try and overcome her nervousness. Mrs. Bearry then decided, with the advice of Mrs. Frettwell, to return to the insurance office and give them a true statement as to who was driving the automobile and any other facts that they wanted to know. This testimony *533 by Mrs. Bearry was in no way contradicted by the defendant insurance company. Therefore, the only conclusion that we can reach here is although she had originally given a statement that she was in the automobile at the time of the accident, she corrected it on that same date.
Edward Black's statement in the record shows that he had stated that Mrs. Bearry and he were the only ones in their car and that the driver of the other car was alone. He admitted the falsity of this statement.
The primary question which we shall consider first is whether under the omnibus clause in the policy the operator of the vehicle, Edward Black, was covered at the time of this accident.
Counsel for the defendant relies principally upon three cases the first of which is Monroe v. Heard, La.App., 168 So. 519, 521, decided by this court, which involved the same question that is now before the court. In this case the owner of the car loaned it to a Mrs. Perkins, who apparently had a date with a Mr. Borsum, who was driving at the time of the accident. The court is sustaining exceptions of no cause of action because the petition and supplemental petition failed to allege that Mr. Borsum was operating the car with the consent of the owner, Miss Heard. As its authority the court quoted the following from 6 Blashfield Cyc. of Automobile Law and Practice (Per. Ed.) Page 326, Section 3943:
"Permission to drive does not confer upon the licensee the power to confer permission, and one driving under this derivative, and therefore defective, permission is not an additional assured."
The Court specifically held: "Therefore, in the absence of any allegation that Borsum was operating the car with the consent of Miss Heard, the owner, the petition fails to show liability in the insurance company for the injury caused by the negligence of Borsum."
The second case is Longwell v. Massachusetts Bonding and Insurance Co., La. App., 63 So.2d 440, 441, also decided by this court in which a truck had been entrusted by its owner to one Trahan on January 24, 1949, with instructions to deliver a load of shrimp to New Orleans. The employee left the employer's place of business at Cameron, proceeded to New Orleans and accomplished his mission. On his return trip, however, on reaching the town of Kinder, instead of turning south, which would have been the normal route to Cameron, he turned north and proceeded to Oakdale. There he met one Ida Mae Smith, to whom he entrusted the operation of the truck and while she was driving same with Trahan seated next to her, drove into plaintiff's house causing the damage sought to be recovered in the suit.
The court in dealing with a question of liability under the omnibus clause, stated:
"More difficult of solution is the liability of the remaining defendant, Massachusetts Bonding and Insurance Company. Counsel for plaintiff predicates his cause of action against the insurer on the ground that as Trahan had initial permission to use the truck the appellant is liable under the so called `omnibus clause' of the policy. Counsel for defendant, on the other hand, contend that as Ida Mae Smith was not given permission to use the truck by its owner, Trosclair, and that as the employee, Trahan, had no authority to grant such permission, she was not an assured within the terms of the policy. * * *".
The court cited Monroe v. Heard, supra, and, in fact, followed the holding of this court in the Monroe v. Heard case, and quoted from the case and emphasized the statement of the court that coverage could not be extended to liability for the negligence of another with whom the borrower had intrusted the operation of the car without the consent of the owner, and also specially emphasized the quotation given by this court in Monroe v. Heard which was the basis of its decision from 6 Blashfield *534 Cyc. of Automobile Law and Practice (Permanent Edition) Par. 3, Section 3944. As additional authority for its holding the majority quoted the rule stated in 45 C.J.S. verbo Insurance § 829, p. 901, as follows:
"`Delegation of permission. One to whom insured has given permission to use the car has no authority to delegate such permission to another so as to make the latter an additional insured * * *.' Citing Monroe v. Heard, La.App., 168 So. 519, supra, and other cases."
The court also quoted American Jurisprudence, Vol. 5, Automobiles, Sec. 535.1 (New Text) which is under the heading of "By permittee of Named Insured." In this quote the court emphasized what was evidently the basis of its decision and we quote:
"`* * * And an original permittee who has been given permission to use the car cannot, according to the great weight of authority, delegate this authority to a second permittee so as to bring the use of the car by that person within the protection of the policy where the initial permission, is silent as to the question of delegation of authority. * * * In a number of cases the point of view has been taken that the initial permission given by the named assured to the original permittee to use the car does not give him authority to delegate the actual operation of the car to a second permittee even though the original permittee is riding in the car driven by the second permittee or the second permittee in using the car does so in the first permittee's interest. * * *.'"
The court then stated:
"Counsel for plaintiff has cited and relied upon the cases of Donovan v. Standard Oil Co., La.App., 197 So. 320 and Perrodin v. Thibodeaux, La.App., 191 So. 148, which he contends are controlling here. An examination of these authorities reveals that as in each the driver who loaned the vehicle had more or less general discretion and continuous control over the vehicle he could validly grant permission to a third party to use the vehicle. Here the situation is different. The insured's driver, it seems clear from the record, did not have any such general discretion and continuous control, but only discretion and control for the singular and specified purpose of making a trip to New Orleans and returning. This being the case we do not believe he could grant permission to another to operate the truck so as to bring the third person within the meaning of the term `insured' as used in the omnibus clause of the policy."
Writs were applied for and refused by the Supreme Court with the comment, "We find no error of law in the judgment of the Court of Appeal."[1]
The third case is Parker v. Great American Indemnity Co., La.App., 81 So.2d 79. In this case, on the day of the accident a truck which was coupled to a trailer was driven from Lafayette to New Orleans by Anthony Celestine, a regularly employed truck driver of Pooler Building Materials Company. Celestine was accompanied on his journey by Francis, his helper, who also is an employee of the owner of the truck. Upon reaching New Orleans, the trailer portion of the vehicle was left at the Flintcote Company to be loaded overnight for return to Lafayette by means of the truck, and Celestine and Francis were instructed to stay in New Orleans until the return was duly made.
After the trailer had been disengaged at the Flintcote plant, Celestine, still accompanied by Francis, drove the truck to a residence on St. Anthony Street. The vehicle was allowed to stand in the street, and after the doors of the cab were locked, the two men proceeded into the house. Several hours later, Francis stated to Celestine that he desired to go outside and sit in the truck and requested that Celestine *535 let him have the key to the cab, which, incidentally, also locked and unlocked the ignition switch. Francis, sat in the truck for a while and then turned on the ignition system and attempted to drive around the block, during which maneuver the truck crashed into the plaintiff's automobile.
It was further shown that Celestine's uncontradicted testimony was that the instructions of his employer were that he permit no one else to operate the truck.
Plaintiff based his cause of action against the insurer on the ground that as Celestine had the initial permission to operate the truck, appellant is liable under the familiar "omnibus clause" of the policy.
The defendant, on the other hand, contended that as Francis was not given any permission to use the truck by Pooler Building Material Company and that as Celestine had not the right or authority to grant such permission, Francis was not an omnibus insured within the provisions of the contract of insurance.
The court for the purpose of discussion treated the fact that Celestine turned the key over to Francis under the circumstances is the equivalent of his consent to Francis operating the truck, but still held that there could be no liability imposed on the insurer for damage which the plaintiff sustained. The court stated: "Permission to one to drive a vehicle does not endow the permittee with the power of delegating permission to another person so as to have the legal effect of placing that other person in the category of an additional insured under the omnibus clause."
The court found the facts in the Longwell v. Massachusetts Bonding and Insurance Co. case, supra, almost identical with those of the case it had under consideration, and based its decision largely upon the Longwell case. It did recognize a different rule in cases where the original permittee had more or less general and continuous control over the vehicle, for it stated:
"This is not one of those cases in which a driver who loaned a vehicle to another person had more or less general discretion and continuous control over the vehicle and could validly grant permission to a third party to operate the vehicle. The record makes it crystal clear that Celestine did not have any such general discretion and continuous control but only discretion and control for the specific purpose of making the trip to New Orleans and returning to Lafayette with the loaded trailer. Consequently, Francis, who did not operate the truck with the permission of the named insured, cannot be held to be an additional insured under the omnibus clause and defendant is not liable for the damages sustained by plaintiff."
On the other hand counsel for the plaintiff cites, discusses and relies upon many of the cases discussed in the three cases relied upon by the defendant, above, supra, and the recent case decided by this court of Brooks v. Delta Fire & Casualty Co., La. App., 82 So.2d 55, 56. In view of the fact that the Brooks case contains a full, thorough and detailed discussion of the law and prior jurisprudence and contains a discussion of many of the cases relied upon and cited by the plaintiff, we will take the liberty of a somewhat detailed discussion and quotation from this case. While there was a dissent in this case, like the Longwell case, supra, writs of certiorari were denied by the Supreme Court of Louisiana. This would lead one to believe that the two cases are not in conflict.
The facts as stated in our opinion are given as follows:
"The undisputed facts concerning use of Dr. Pierce's automobile on the day of the accident are these: Dr. Pierce's daughter, Mrs. Moreau, intended to go to New Orleans for medical examination on the day of the accident. Since she wished to take her six-week old baby, she asked her friend, Hilda Deitz, to go with her to take care of the baby. Miss Deitz also wished to go to New Orleans to pick up some papers to prepare *536 for examination as a beautician both for herself and for some of her friends. Both missions were accomplished in New Orleans, and the friends returned to Baton Rouge, where they attempted to call their parents to let them know of their return. They reached the Pierces, but the Deitz telephone was busy, so they drove to the Dietz [sic] residence. While there, they decided to deliver the application forms to one of Miss Deitz' friends. Up until this time, these young ladies testified, Mrs. Moreau had been doing all the driving. But at this point since Mrs. Moreau's baby was crying, Mrs. Moreau asked Miss Deitz to drive while she held her baby. It was while Miss Deitz was driving to the home of the friend that the accident occurred.
"The testimony indicates that Miss Deitz had stayed overnight at the home of Dr. Pierce, where Mrs. Moreau although married was living at the time. Both Dr. and Mrs. Pierce knew that Miss Deitz was to accompany their daughter to New Orleans. It is admitted that there was no discussion whatsoever before the girls left as to whether or not Miss Deitz or anyone else was authorized to drive the family car. Before the accident, Miss Deitz had no inkling that she was not supposed to drive this car.
"However, on the trial of this matter, Dr. Pierce testified, corroborated by his wife and by his daughter, that on several prior occasions he had informed his daughter not to let anyone else drive his car.[1] Based on this testimony that Dr. Pierce had not authorized Miss Deitz' use of the automobile, and also on its finding that at the time of the accident Miss Deitz was engaged in a personal errand of no benefit to the Pierces or their daughter, the District Court found that her operation of the motor vehicle was not covered under the omnibus clause of the policy in question under the holding of this Court in Longwell v. Massachusetts Bonding & Ins. Co., La. App., 63 So.2d 440, writ of certiorari denied."
Based upon the quoted facts, the court, with Judge Tate as the organ of the majority, stated:
"Since Parks v. Hall, 189 La. 849, 181 So. 191, our Supreme Court has liberally construed the `permission' in the omnibus clause so as to afford coverage when initial permission is given even when the original permittee deviates from or even violates the instructions given him by the owner as to the use of the automobile.[2] In the recent cases of Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, and Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744, 747, our Supreme Court unequivocably held that there was coverage under the omnibus clause even when the employees authorized to drive the vehicles for specific purposes violated specific general instructions, not to remove the vehicles from their night-time parking places by removing same for personal *537 purposes later in the evening, during which the accidents resulted.[3] See also Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9.
"In his concurring opinion in the Dominguez case, Chief Justice Founet stated at 46 So.2d 751:
"`The language in the policy is to be construed so as to effectuate the insurance and not for the purpose of defeating it; and that where the language used in the policy is ambiguous, admitting of two constructions, it must be construed in favor of the insured and against the insurer so that the interest of the insured, who has paid a consideration for the indemnity, may be protected';
and again:
"`This construction clearly gives effect to the evident intent of the parties, for the omnibus clause was included in their contract for the very purpose of covering the liability of the operator of the car as the unnamed assured, and so that any injured person would be given a cause of action against the insurer for injuries deemed by law to have been caused by the operation of the car.' (Italics ours)"
"It would appear from the language and holdings of these cases that the operation of a car by anyone who has been given legal control thereof shall be covered under the omnibus clause of any liability insurance policy covering operation of the said automobile. Deviation from instructions given prior to control of the automobile being entrusted to the original permittee were held `immaterial and of no moment', Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, 748. Increasingly the concept of a liability insurance policy has been as a protection not only to the named insured, but also to the public. It is regarded not only as insurance carried on operation itself of the vehicle. See the Motor Vehicle Safety Responsibility law, LSA-R.S. 32:851 et seq., especially LSA-R.S. 32-872, subd. C(2) accepting an `automobile liability policy' as security after an accident if the owner had in effect such policy `with respect to the motor vehicle involved in the accident.'"[4]
We attempted to distinguish the Longwell v. Massachusetts Bonding & Ins. Co. case, supra, however, the basis of this decision is shown by the following statement of the court:
"But we prefer to rest our ruling herein on the holding that the actual use of the automobile on the occasion of the accident was with the permission of the named insured, such use being within the coverage of the omnibus clause under the unambiguous wording of the policy as interpreted by the Supreme Court of Louisiana."
*538 We fail to see any distinction between a violation of instructions in the use of a motor vehicle, that is, a deviation, and a violation of instruction by an original permittee in allowing a second permittee to operate the motor vehicle. We believe that in both instances the Supreme Court intended the rule laid down in Parks v. Hall; Waits v. Indemnity Ins. Co. of North America; Dominguez v. American Casualty Co., all supra, to apply with equal force. The cases referred to and cited establish the rule in Louisiana in such cases that initial permission is all that is required. The foundation or theory upon which this rule is based is stated in Parks v. Hall, supra [189 La. 849, 181 So. 192], as follows:
"The authorities in other jurisdictions on this question are divided. Some held that by such a clause is meant the consent to use the car obtained in the first instance from the assured, regardless of the use to which the operator puts the same while in his possession, while others hold that the clause means the consent for use of the insured car at the time, place, and under the circumstances of the accident. See 41 A. L.R. 507 and 72 A.L.R. 1375, and the cases therein referred to.
"`An insurance policy is a contract and the rules established for the construction of written instruments apply to contracts of insurance.' 14 Ruling Case Law, § 102, p. 925; Wallace v. Insurance Co., 4 La. 289; Brown v. Life & Causalty Ins. Co., La. App., 146 So. 332; [LSA-] Civ.Code, arts. 1901, 1945. In accordance with this rule `an automobile collision policy must be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto. The language employed in the policy is to be construed so as to effectuate the insurance and not for the purpose of defeating it; therefore, if the language used is ambiguous or admits of two constructions, it will be construed in favor of insured and against insurer in such a way as to protect the interest of insured who has paid a consideration for the indemnity. * * *' 42 Corpus Juris, § 356, pp. 790, 791; Heiman v. Pan American Life Ins. Co., 183 La. 1045, 165 So. 195; Travia v. Metropolitan Life Ins. Co., 186 La. 934, 173 So. 721.
"`The omnibus coverage clause gives additional assureds, other than the person named in the liability policy as assured, with certain specified limitations, the benefit of the policy. * * * It extends protection to one `permitted' to use the car, although the `assured' may not be liable for the accident under the doctrine respondeat superior. The object of such clause is to cover the liability of the operator of the car as unnamed assured, and to protect any person so injured by giving him a cause of action against the insurer for injuries deemed by law to have been caused by the operation of the car. An employee, to be an `additional assured' within the meaning of the omnibus clause, must be one who is using his employer's automobile at the time of the accident, with permission of his employer.' Huddy Cyc. of Automobile Law, 9th Ed., vol. 13-14, p. 405 (Italics ours.)"
Again in Dominguez v. American Casualty Co., 46 So.2d at page 747, we find the Supreme Court restating its position as follows:
"A study of the jurisprudence of the various states of this nation on this subject of `Omnibus Clause cases' quickly shows that the decisions are both numerous and far from uniform as to rules followed, the opinions using a varied assortment of legal theories to support their finding in each individual case. There is one recent comprehensive compilation of the Omnibus Clause cases dealing with an employee of the assured in 5 A.L.R.2d 600 under the heading `Automobile Liability Insurance: Permission or Consent of the Employee's Use of Car Within Meaning of the Omnibus Coverage Clause.'
"Reference to this study indicates that there are generally three different lines of authority dealing with the question of `Permission' *539 to an employee in an Omnibus Clause. One group of jurisdictions, including Louisiana, holds that initial permission by the employer is all that is required, and another, and smaller group of states, follows the so-called strict or conversion rule to the effect that the exact use of the vehicle at the time and place of the accident must have been with the permission of the employer. The third group of jurisdictions follows a less definite rule between the extremes of the other two rules and holds that it is necessary to consider the extent and effect of the particular deviation involved, minor deviation being considered with permission, major deviation being considered without permission, and therefore without Omnibus Coverage. The leading case in the `Initial Permission' states is the case of Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500, followed by Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368. [Emphasis added.]
"In the Dickinson case the court went so far as to say that the purpose of the Omnibus Clause was not only to protect a person legally operating the car with the permission of the insured, but also to protect any person injured by the operation of the car by giving him a cause of action against the insurer for injuries deemed by the law to have been caused by the operation of the car. This purpose likewise was adopted by the court in the case of Fried v. London Guarantee and Accident Co., 136 Misc. 740, 242 N.Y.S. 60."
From a factual standpoint, the case at bar is stronger than Brooks v. Delta Fire and Causalty Co., supra. In the case at bar the wife of the named insured was given unrestricted use, control and possession of the automobile. On the day of the accident she had requested Black to drive her to work, which he did, to return and take the named insured's children to school as the weather was very inclement and had given him permission to use the automobile to go to his work and then to return at noon to her place of employment in order to pick her up for lunch. Black testifies that on account of the weather he did not go to work but picked up a friend and engaged in some drinking, but at the time of the accident was returning to the place of employment of Mrs. Bearry in order to pick her up according to instructions from her. There is a dispute as to whether he was actually on his way to pick up Mrs. Bearry at the time of the accident. This would be immaterial under the established law heretofore discussed. Mrs. Bearry was authorized under the Louisiana rule of "Initial permission" from her husband, the named insured, to permit Black to operate the automobile. Black's driving, except for the deviation, was for the benefit of the named insured, as well as the original permittee, as the health and welfare of the children was for the benefit of both, and the operation and use of the automobile at the time of the accident when Black was on his way to pick up Mrs. Bearry, the original permittee, was for her benefit. The named insured, husband and father, respectively, of the original permittee and her children, expected the automobile to be used without a doubt for the benefit of his wife, the original permittee, and their children. Whether he expected her to allow the automobile to be operated for that use and purpose by a third party is not shown by the record nor is it, we believe, material.
Paraphrasing our holding in Brooks v. Delta Fire and Cas. Co., supra, we rest our ruling herein on the holding that the actual use of the automobile on the occasion of the accident was with the initial permission of the named insured, such use being within the coverage of the omnibus clause under the unambiguous wording of the policy as interpreted by the Supreme Court of Louisiana. We therefore hold that initial permission is all that is necessary or required under the settled jurisprudence of the Supreme Court of Louisiana.
Defendants have an alternative defense that if we find Black had permission *540 to drive the automobile from the named insured that he and Mrs. Bearry failed to give the defendants true statements and therefore failed to assist and cooperate with the insured; under the terms of the policy. They contend that the true facts and events preceding and surrounding the accident did not become available to the insurer until the depositions were taken for the purpose of trial. They base this defense on the theory that both Mrs. Bearry and Mr. Black were "insured" under the terms of the policy if permission was granted to them and both of them failed to fully inform the defendants of the true facts as they existed. It is in this way that the insurers urge the "insured" did not cooperate or assist the insurer in its investigation of the accident.
While it is true that the initial statements given by Mrs. Bearry were not true there is uncontradicted testimony in the record that she immediately changed her false statement and informed the insurance company that she was not present at the time of the accident and was not riding in the vehicle. It is also true that Black's statement was never changed, this statement being to the effect that both he and Mrs. Bearry were driving together in the automobile, until his deposition was taken and he unhesitatingly admitted the falsity of his first statement to an insurance representative while in jail. However, the insurance company was informed that this was an inaccurate statement and there is no testimony or evidence to indicate whether the insurance company sought to elicit the true facts from Black after being informed of the true facts by Mrs. Bearry. We do not find that there was a lack of co-operation or assistance to the extent that it voided the policy or denied coverage otherwise valid as found under the facts in this case.
The remaining question is whether the plaintiff is entitled to penalties and attorney's fees. He has answered the appeal seeking an increase in the award to include penalties and attorney's fees under the authority of LSA-R.S. 22:658. Plaintiff seeks to invoke the pronouncement in Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695. However, the Wright case cited supra dealt with the Workmen's Compensation Act, LSA-R.S. 23:1221, and interpreting the insurance policy it found a direct obligation of the insured to pay the injured employee who was for all intents and purposes the "insured" under the terms of the policy in question in that case.
The effect of LSA-R.S. 22:658 is to penalize the insurer for failure to pay a valid claim by its insured within sixty days of a satisfactory proof of loss, where its failure was arbitrary and capricious. There is no language found in the statute that holds the insured to be liable for any penalties or attorney's fees for failure to pay a claim agent against them by any person other than the insured. By no stretch of the imagination is an injured claimant in a damage suit the "insured".
For the reasons assigned the judgment of the district court is hereby affirmed.
NOTES
[1] This is a statement made in the case of Parker v. Great American Indemnity Co., 81 So.2d 79, at page 82.
[1] The evidence to this effect appeared to us vague and ambiguous, and was somewhat reluctantly educed on direct examination. However, the District Court, with its opportunity to see and hear the witnesses, found this testimony credible, and we are unable to find manifestly erroneous his conclusions on this matter of fact."
[2] See 45 C.J.S. Insurance § 829, p. 898: `Under other authority, however, permission to use the car in the first instance is permission within the omnibus clause, regardless of the use to which the car is actually put thereafter, so that insurer is liable even if the accident occurs while the car is being used in a manner not embraced within the limits of the permission given, or even in a manner which violates an express prohibition by insured.' Cited in support of this text are: Parks v. Hall, 189 La. 849, 181 So. 191, and Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, and other Louisiana cases. See also extremely comprehensive Comment by Mr. Ben R. Miller, a leader of the Louisiana Bar and member of the Louisiana Law Institute, `The Omnibus Clause', 15 Tulane Law Review 422.
[3] As stated by our brothers of the Orleans Court of Appeals in Sun Underwriters Ins. Co. v. Standard Accident Ins. Co. of Detroit, Mich., La.App., 47 So.2d 133, where a chauffeur used the automobile of his employer (the named insured) at night without her knowledge and in violation of her general instructions, and it was held servant had implied permission:

"`In Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, 748, the Supreme Court again considered this question and with two justices dissenting, held that initial permission is all that is necessary and that there is coverage, regardless of the use to which the car may be put', 47 So.2d 137, and
"`We feel that the established jurisprudence requires a holding that the permission to use the car at all makes the omnibus clause applicable to practically any subsequent use to which the car may be put'; 47 So.2d 139.
[4] Appellant has cited to us LSA-R.S. 32:900 concerning certain requirements of `Motor Vehicle Liability Policies', required after an operator has been cast in judgment which is unsatisfied. For the reasons more fully discussed in Kennedy v. Audubon Insurance Co., La.App., 82 So.2d 91, such requirements are not applicable to the `automobile liability policy' which an owner or operator may post as security under LSA-R.S. 32:872 to avoid suspension of his license and/or registration until his liability or absence thereof is determined."